**Earl B. RANDOLPH et al., Appellants,**

v.

**Clyde H. SIMPSON et al., Appellees.**

**No. 26319.**

United States Court of Appeals
Fifth Circuit.

May 1, 1969.

William C. Bostwick, Jacksonville, Fla., for appellants.

F. William Marr, Walter C. Shea, William Joe Sears, Jr., Frank X. Friedmann, Jr., J. Henry Blount, Wm. M. Madison, Jacksonville, Fla., Larry E. Levy, Asst. Gen. Counsel, Tallahassee, Fla., for Duval City, Fla.

Earl Faircloth, Atty. Gen. of Florida, Tallahassee, for Fred O. Dickinson.

William Lee Allen, Jacksonville, Fla., for City of Jacksonville.

Before JOHN R. BROWN, Chief Judge, and GEWIN and GOLDBERG, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is an attack on the federal constitutional validity of the Florida ad valorem tax structure, which is established in her Constitution [1] and implementing statutes. The system is challenged primarily on the ground that the provisions for ad valorem taxation of real estate and tangible personal property by county and municipal governments at rates different from those imposed in ad valorem taxation of intangibles for the benefit of the State Government [2] result in a denial of equal protection of the laws.[3] The broad claim is made that the Federal Constitution requires equality of tax burden amongst all property owners of every kind and description. Stated more vividly, classifications of types of property for distinct methods or types of taxation is no longer constitutionally acceptable if on the basis of relative values the owner of a given type of property (e. g., real estate) bears a burden either because of value, rate, or both that is greater than that imposed on some other type of wealth (e. g., stocks, bonds, bank accounts, certificates of deposit, etc.) of like monetary value.[4] On motion to dismiss for failure to state a claim upon which relief could be granted, the District Court dismissed the case with prejudice after the property owners declined to amend. We affirm.

Since the complaint set forth with adequate detail the claim that the amount in controversy exceeded $10,000 exclusive of interest and costs, there was clear Federal Court jurisdiction under the "federal question" provision, 28 U.S.C.A. § 1331(a). We therefore need not determine whether and to what extent Federal Court jurisdiction could arise under the Civil Rights Acts, 42 U.S.C.A. §§ 1981–1983, and particularly § 1983, where the constitutional claim relates only to property, not personal, rights. See Bussie v. Long, 5 Cir., 1967, 383 F.2d 766, 769; Atlanta Bowling Center, Inc. v. Allen, 5 Cir., 1968, 389 F.2d 713, 715 n. 9. Likewise, since several of the taxpayer-plaintiffs in this case instituted a similar action in the Florida State Courts only to lose out at the hands of the Florida Supreme Court, see Just Valuation & Taxation League, Inc. v. Simpson, Fla., 1968, 209 So.2d 229,[5] we may assume without deciding that there has

1. In the period since the filing of the original complaint and the District Court's eventual dismissal, Florida has amended her Constitution. The constitutional provisions here brought under fire, however, have not been altered in substance. Therefore, references in this opinion will be to the new Constitution.

2. The constitutional and statutory scheme of taxation in Florida revolves primarily around ad valorem property taxation. The State is prohibited from levying ad valorem taxes on real estate or tangible personal property. Fla.Const. Art. VII, § 1(a) (1968). This source of revenue is exclusively designated for counties, school districts, municipalities, and special districts. Id. § 9(a). The State, on the other hand, has the sole right to levy ad valorem taxes on intangibles. Id. §§ 1(a), 9(a).

3. There are also intimations in the complaint of a due process contention, but these are overshadowed by the emphasis on the equal protection argument. They are not pressed here, and, in any event, on the most liberal treatment of them are rejected as wholly without merit.

4. As nearly as we can discern the contention, it is that the difference between the limited millage rate on intangibles (reserved for state uses), i. e. two mills (Fla. Const. art. VII, § 2), and the traditionally higher rate on real estate and tangibles (reserved for uses of subordinate entities), considering asserted relative dollar values of these two major classifications of property, imposes on one class —real estate and tangibles—a disproportionate share of the total tax burden of the State. Since allocation of uses is performed by the State, in this attack the State is viewed as a whole, single taxing sovereign encompassing all the subordinate entities (cities, schools, etc.).

5. No review of this decision—either by appeal or certiorari—was sought in the United States Supreme Court.

been an adequate compliance with the Johnson Act, 28 U.S.C.A. § 1341, to permit resort to the Federal Courts in this state tax matter. Cf. City of Houston v. Standard-Triumph Motor Co., 5 Cir., 1965, 347 F.2d 194, cert. denied, 1966, 382 U.S. 974, 86 S.Ct. 539, 15 L. Ed.2d 466. Likewise, we assume without deciding that the prior decision in the Florida Supreme Court does not foreclose the subsequent separate maintenance of this Federal Court attack on substantially the same grounds at the hands of some or all of the same parties.[6]

With these preliminaries out of the way, we find on the merits of this case that there was ample basis for the conclusion of the District Court that the Florida tax structure in itself and in its asserted application and operation did not reveal such invidious discrimination as to be insupportable under federal constitutional standards. Recognizing the need for state autonomy and flexibility in this area, the Supreme Court has long catechized that great latitude must be accorded to the states and their political subdivisions in the classification of property subject to taxation, the prescription of different tax rates, structures, administration and the like.[7] The only requirement is that the classification must be reasonable. E. g., Allied Stores v. Bowers, 1959, 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480, 485. The classification must not be "palpably arbitrary," id., and must rest upon some "real and not feigned differences," Walters v. City of St. Louis, 1954, 347 U.S. 231, 237, 74 S.Ct. 505, 510, 98 L.Ed. 660, 665.

In our view, it is clearly not unreasonable for Florida to classify intangible personal property separately from tangible personal property and real estate. Indeed, the Supreme Court has recognized that the distinction is a permissible one:

"It is plain that the Fourteenth Amendment does not preclude a state from placing notes and receivables in a different class from personal property used in agriculture and the products of agriculture, including livestock, and taxing the two classes differently, even though the state places them in a single class for other purposes of taxation."

Charleston Fed. Sav. & Loan Ass'n v. Alderson, 324 U.S. 182, 191, 65 S.Ct. 624, 630, 89 L.Ed. 857, 864. Likewise, in an earlier case the Supreme Court stated, "the [Fourteenth] amendment does not prevent the classification of property for taxation—subjecting one kind of property to one rate of taxation, and another kind of property to a different rate— distinguishing between franchises, licenses and privileges, and visible and tangible property, and between real and personal property." Home Ins. Co. v. New York, 1890, 134 U.S. 594, 606, 10 S.Ct. 593, 597, 33 L.Ed. 1025, 1032. See also Bell's Gap R. R. v. Com. of Pennsylvania, 1890, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892. Of course, the most extreme form of classification is a categorical exemption, but this too is within the state's power. Carmichael v. Southern Coal & Coke Co., 1937, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245.

Of course there may be, and probably are, instances of disparity so gross and recognizable that the judiciary can with some realistic confidence strike a taxing scheme down on federal constitutional principles, cf. Morton Salt Co. v. City of South Hutchinson, 10 Cir., 1947, 159 F.2d 897. But otherwise, application of these long declared principles leaves to the states, not the Federal Judiciary, the broad exercise of legisla-

---

6. Cf. England v. Louisiana State Bd. of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440.

7. See, e. g., Allied Stores v. Bowers, 1959, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480; Walters v. City of St. Louis, 1954, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660; Nashville, C. & St. L. Ry. v. Browning, 1940, 310 U.S. 362, 60 S.Ct. 968, 84 L. Ed. 1254; Madden v. Com. of Kentucky, 1940, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590.

tive choices in the formulation of the tax structure.[8] . This conclusion also washes out simultaneously the contention that a 3-Judge Court should have been convened, 28 U.S.C.A. §§ 2281–2284. In light of the established principles,[9] we hold that when state constitutional standards or statutes regarding taxation are assailed on grounds that would, in effect, require the state to classify properties solely on the basis of relative values and to tax only under a uniform rate for each and every kind of property, the question presented is so insubstantial that it does not call for the convening of a 3-Judge Court. Bailey v. Patterson, 1962, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed. 2d 512; Ex parte Poresky, 1933, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; Kirkland v. Wallace, 5 Cir., 1968, 403 F.2d

---

**8.** Not the least of the problems involved are administration and the ease or difficulty of self-assessment, payment, or collection. For example, high rates on intangibles discourage voluntary payment and encourage easy concealment. Also, from a substantive standpoint intangibles like stocks and bonds are generally representative of tangible wealth, which presents a risk of economic double taxation.

These choices, the infinite variables in local interests, problems, and their range beyond the ordinary competence of Judges and the capacity of the traditional adversary judicial system, are sharply revealed by the abundance of resource material on the problems of taxation set out in the brief of the taxing authorities of Duval County (Jacksonville) :

The reform movement in the taxation field beginning in the 1920's has found one of its principal expressions in support of a classified property tax. The separation of intangibles from general taxable property and the imposition of lower tax rates on intangibles is supported by sound economic reasoning. Hellerstein, Jerome R., State and Local Taxation, Part 3, p. 61 (1961) ; Lynn, Arthur D., "Trends in Taxation of Personal Property", The Property Tax: Problems and Potentials—Tax Institute of America, Chap. XXVIII (Symposium. November, 1966) Princeton, N. J.; Snodgrass, W. R., "The Classification Issue in Tennessee", op. cit. supra, Chap. XX; Report of the Committee on Model Taxation, 1964 Proceedings, p. 169; Leland, S. E., "An Appraisal of the Results Secured By The Application of the Principle of Classification to Intangible Property", National Tax Association, Proceedings of the Twenty-First National Conference, p. 292 (1928).[10]

The most oft-cited reasons for limited intangible taxation were reiterated in the 1964 report of the Committee on Model Property Taxation, op. cit. supra:

"(1) It avoids or reduces the double taxation of representative property;
(2) It minimizes the underreporting

that inevitably results from the application of high rates to intangible property; and (3) It ˙eliminates a tax which would take an overlarge percentage of the income from intangibles."

The Committee explained that the National Tax Association had long supported special treatment for intangible property and that they saw "no basis in subsequent experience for differing from that recommendation." Id. at 194.

The likelihood of double taxation of intangible property, which is representative property, is distinct, and a thirty mill tax on a savings account ·earning three per cent takes all of the earned income. Jensen, Jens P., "The Classified Property Tax", Property Taxation in the United States, Chapter 7, University of Chicago Press (1931) ; Nielsen, Carl C., "Intangibles Tax Avoidance; an Empirical Study of Six Mid-western States", Tax Policy, Volume XXXIV, Nos. 2–3 (February-March 1967). Jensen states an additional reason for separate classification of intangibles which is particularly valid in Florida: A neo-mercantilistic policy seeking to retain intangible property or businesses in the state or to attract intangible property or businesses to the state. Jensen, Jens. P., Id. at 201."

Studies and statistics demonstrate that few states still classify intangible property with general taxable property for ad valorem taxation purposes. Remaining states either completely exempt intangible property from taxation or specially classify intangible property subject to a limited millage rate. See, Donovan, Clementh, "Taxation and Finance Issues and Constitutional Revision" Government Research Bulletin, Vol. 4, No. 1, (January 1967) ; Lynn, Arthur D., Jr., "Trends in Taxation of Personal Property", op. cit. supra, Chapter XXVIII; Roesken, Edward, "Trends in Ad Valorem Taxation of Intangibles", op. cit. supra.

**9.** See note 1 supra and related text.

413. Here, "there can be no doubt at all", Jackson v. Choate, 5 Cir., 1968, 404 F.2d 910, 912, of the insubstantiality of the constitutional claims asserted by these property owners, nor does it take "prescience of a Delphic order to say with certainty that the attack is insubstantial." *Id.* at 913. See also Parker v. Tangipahoa Parish School Board, et al, E.D.La., 1969, 299 F.Supp. 421; Wilson v. City of Port Lavaca, S.D.Tex., 1968, 285 F.Supp. 85, aff'd, 5 Cir., 1969, 409 F.2d 1362.

Affirmed.