IVY STEEL AND WIRE COMPANY, INC., a corporation and Food Fair Stores, Inc., a corporation, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

The CITY OF JACKSONVILLE, a Municipal Corporation, Defendant.

No. 72–216–Civ–J.

United States District Court, M. D. Florida, Jacksonville Division.

Aug. 13, 1975.

Ulmer, Murchison, Ashby & Ball, Jacksonville, Fla., for plaintiffs; Gary B. Tullis, Lynda R. Aycock, Jacksonville, Fla., of counsel.

Harry L. Shorstein, Gen. Counsel, Jacksonville, Fla., for defendant; Donald R. Hazouri, Asst. Counsel, Jacksonville, Fla., of counsel.

## OPINION

IRVING BEN COOPER, District Judge, Sitting by Designation.

Plaintiffs Ivy Steel and Wire Co., Inc. and Food Fair Stores, Inc., on behalf of themselves and all others similarly situated, bring this class action for declaratory relief, namely, that Section 614.506 of Ordinance 71–747–334 of the City of Jacksonville, Florida is void as violative of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. The jurisdiction of this Court was properly invoked pursuant to 28 U.S.C. § 1331. This case was tried to the Court on stipulated facts. For the reasons set forth below, the relief sought is denied and the constitutionality of the challenged ordinance is upheld.

The section of the Ordinance under attack provides as follows:

"614.506 *Water Pollution Control Charge.*

(a) *Imposed.* Except as otherwise provided, every property owner whose property first receives sewer services from the City's sewerage system after the effective date of this ordinance shall pay to the City, at the same time as connection charges are paid under Section 614.208, a water pollution control charge computed as follows:

1. For single family residential users, two hundred dollars:

2. For multiple family residential users and all other users, two hundred dollars per equivalent residential connection. For this purpose, equivalent residential connection means the estimated monthly sewage flow in gallons divided by nine thousand. If the Director of Public Works finds the equivalent residential connections cannot be accurately determined on the basis of accepted normal flow standards, equivalent residential connections shall be computed on the basis of one equivalent residential connection for each sixteen fixture-unit values as determined in accordance with Section 900–1413.4 (Building Code), calculated to the nearest one-tenth equivalent residential connection. The minimum water pollution control charge shall be two hundred dollars.

(b) *Exception.* No water pollution control charge, other than an additional charge under Subsection (c), if applicable, shall be due at the time of connection:

1. with respect to property as to which there has been paid a water pollution control charge or equivalent funds for the purpose of defraying the cost of treatment of sewage flowing from his property; or

2. with respect to property the owner of which has either (i) constructed at his own expense and turned over to the City sewage treatment facilities adequate to serve such property or (ii) paid to the City as a part of a sewerage system extension project funds sufficient to construct sewage treatment facilities adequate to serve such property.

(c) *Additional Charge.* If the use of any property served by the City's sewerage system changes after the effective date of this ordinance (1) so as to change its classification for the purpose of computation of the water pollution control charge, or (2) so as to increase the number of equivalent residental connections by more than twenty per cent over the number of such connections at either the time of payment of the last water pollution control charge or the effective date of this ordinance, whichever is later, then an additional charge re-

sulting from the change in property use shall be due and payable at the time of the change in property use, regardless of whether any water pollution control charge was ever imposed or paid at the time of initial connection to the system. The increased charge imposed by this subsection shall be included on and payable as a part of the property owner's next sewer service charge bill under Part 2 of this Chapter.

(d) *Use of Funds.* All revenues derived from the water pollution control charges imposed by this section shall be placed in a separate capital improvement fund in the Water and Sewer Enterprise Fund, to be known and designated as the Sewage Treatment Capital Improvement Fund, and shall be used only for the construction or acquisition of additions, extensions, renewals and replacements to the sewerage treatment plants and pumping stations of the City's sewerage system, as appropriated from time to time by the Council."

The water pollution control charge established by this ordinance went into effect on August 24, 1971. No persons connecting to the Jacksonville sewer system prior to August 24, 1971 were required to pay the water pollution control charge. All persons connecting to the Jacksonville sewer system after August 24, 1971, including named ‑ plaintiffs herein, have been required to pay the water pollution control charge. (Court's Ex. 1, §§ 4–5, 8–10). We note that the water pollution control charge is not a charge for connection to the sewer system or for use of the sewer system but is merely a charge paid at the time of connection and in addition to the connection charge. As stated in subsection (d) of Section 614.506 (set out in full above), the revenues from this charge are placed in a separate capital improvement fund in the Water and Sewer Enterprise Fund, designated the Sewage Treatment Capital Improvement Fund. These revenues are to be used only for the construction

or acquisition of additions, extensions, renewals and replacements to the sewerage treatment plants and pumping stations of the City's sewer system.

The essence of plaintiffs' argument is that although the revenues will benefit every citizen in Jacksonville, payment of the charge falls solely upon those persons connecting to the city sewer system after August 24, 1971. They argue that this distinction is arbitrary and capricious and that the city cannot justify on any rational basis the different treatment afforded to persons connecting to the system prior to August 24, 1971 as opposed to those connecting after August 24, 1971.

We first consider the contention that the classification date of August 24, 1971 was arbitrarily chosen. While it is true that that date is merely the date on which the City Council of Jacksonville enacted City Ordinance 71–747–334 into law, nevertheless it is also true that every regulation, every charge, every tax must have a beginning. *Russo v. Shapiro,* 309 F.Supp. 385 (D.Conn.1969), involved a class action seeking a declaration that certain actions taken by the Connecticut Commissioner of Welfare were unconstitutional. Prior to the fall of 1969, the Connecticut Welfare Department did not provide a back-to-school clothing allowance. Between August 29 and September 3, 1969, such allowances were awarded to several persons on the basis of need without a ceiling on the amount allowable for each individual. On September 3, 1969, the Commissioner issued a directive which included a provision establishing a $30.00 maximum allowance per eligible child for back-to-school clothing. The court, in upholding the Commissioner's actions, stated, with reference to the dates chosen, as follows:

> The Equal Protection Clause does not prevent a statute or regulation from having a beginning and thus discriminate between rights of an earlier and a later time. . . . Even if that change results in smaller benefits being awarded thereafter, plaintiffs

have not been denied equal protection so long as they are being treated the same as those similarly situated *at the same time.*

309 F.Supp. 391–392 (emphasis in original).

In *United States v. Kline,* 354 F.Supp. 931 (M.D.Pa.), *aff'd mem.,* 474 F.2d 1337 (3d Cir. 1972), the defendant attacked his classification by the Selective Service as I–A on several grounds, among them that the Executive Order abolishing the paternity deferment as of April 24, 1970 violated equal protection. The trial court dismissed this argument:

> Though the test has been variously stated, the ultimate criterion is whether the line drawn is a rational one; and a classification is arbitrary only if it is without any reasonable basis. . . . The defendant has failed to establish, and the court fails to perceive, that the abolition of the paternity deferment discriminates invidiously. Kline's argument implicitly assumes that any enactment which creates or terminates rights must arbitrarily affect those who suffer by exclusion. However, equal protection does not prevent an enactment from having a beginning or an end, and thereby distinguishing between rights of an earlier or a later time. 354 F.Supp. at 934–935 (footnotes omitted).

■ Similarly, the Constitution does not prevent the use of the date of August 24, 1971 by Jacksonville to establish the water pollution control charge. As the court in *Russo v. Shapiro, supra,* stated, the question is whether plaintiffs are being treated the same as those similarly situated *at the same time. All* persons connecting to the Jacksonville sewer system after August 24, 1971 must pay the water pollution control charge. The requirements of the Fourteenth Amendment have not been violated on this ground.

Plaintiffs argue further, however, that the use of August 24, 1971 does more than establish the beginning of the charge. That date also shifts the burden of the costs of renewal and improvement of the system onto a limited class of users even though every citizen benefits. This classification, it is charged, is arbitrary and fails to rest on any grounds of difference having a fair and substantial relation to the object of the ordinance so that all persons similarly circumstanced can be treated alike.

■ At the outset we note that the classification here does not involve inherently suspect categories such as race or religion. Nor is the interest plaintiffs seek to protect one that is fundamental to the Constitution and thus entitled to strict judicial scrutiny. *See, e. g., Harper v. Virginia State Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Instead we are concerned with economic regulation, the raising of revenue to support a laudable program of water pollution control. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." Further, "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. . . . It is enough that the State's action be rationally based and free from invidious discrimination." *Dandridge v. Williams,* 397 U.S. 471, 485, 486–487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). "When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed." *Morey v. Doud,* 354 U.S. 457, 464, 77 S.Ct. 1344, 1349, 1 L.Ed. 2d 1485 (1957). *See generally, Developments in the Law—Equal Protection,* 82 Harv.L.Rev. 1065 (1969). Finally, as mentioned, the water pollution control

charge is not a connection charge or a use charge, but a method to produce revenues. In this respect it is very much like a tax, and the states have broad discretion in the exercise of their taxing power. "Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 358, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973). The Supreme Court has commented that

. . . in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.

*Madden v. Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). *See also, Kahn v. Shevin,* 416 U.S. 351, 355–356, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Desco Products Caribbean Inc. v. Government of Virgin Islands,* 511 F. 2d 1157, 1160 (3d Cir. 1975); *Randolph v. Simpson,* 410 F.2d 1067, 1069–1070 (5th Cir. 1969).

██ Bearing these standards in mind we cannot say that the water pollution control charge is arbitrary and lacks any rational basis. In recent years the population of Jacksonville has increased dramatically, due partly to an influx of residents, and partly to its geographical expansion into all of Duval County. According to the United States Bureau of Census (as reported in the 1974 World Almanac, p. 150) its population has more than doubled, from about 201,000 in 1960 to over 528,000 in 1970, making Jacksonville the 23rd largest city in the country. The City Council may well

have determined that it was fiscally sound to impose the costs of the accelerated expansion, renewal and improvement of the sewer system onto those who were creating the immediate need for these increased expenditures, namely, those who were connecting to the system for the first time. Such a determination is certainly enough to uphold this ordinance.

Plaintiffs argue that the ordinance unfairly requires that one group of persons pay for the benefit and exempts the other who also receive benefit. However true this may be, the ordinance is not rendered unconstitutional. Our system of government frequently imposes certain burdens on some groups while exempting others. The Selective Service System requires the participation only of males between the ages of 18½ and 26, yet these classifications have been upheld consistently against constitutional attack. *United States v. Spencer,* 473 F.2d 1009, 1010 (9th Cir. 1973); *United States v. Zaugh,* 445 F.2d 300, 300–301 (9th Cir. 1971). Similarly, the use of property taxes to finance educational systems has been upheld, despite the fact that, while all benefit, only some bear the burden:

No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause.

*San Antonio School District v. Rodriguez,* 411 U.S. 1, 41, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16 (1973); see also *Randolph v. Simpson, supra.*

That a water pollution control charge is involved here, and not a tax *per se,* does not distinguish those cases. The charge is an integral part of Jacksonville's fiscal structure and must be con-

sidered in that light. The Supreme Court of Florida recognized this principle in a case with somewhat similar facts. An action was brought challenging the validity of an ordinance imposing a charge on the users of a sewer system for the purpose of raising money for engineering services. The court discusses the constitutional problems there presented and then goes on to state,

> The treatment of sewage so that it will not contaminate the waters on which the city is located and so that the health of a community as a whole will be protected is just ground for the imposition of the charge, even though the burden is presently borne by relatively few. In all matters of taxation there is likely to be actual or potential inequity, and very often benefits may inure to those who do not contribute to the public treasury.

*Buchanan v. City of Miami*, 49 So.2d 336 (Fla.1950)

Finally, plaintiffs argue that the charge could have been collected from all persons receiving sewer service with their next sewer bill, just as easily as it is collected at the time of connection from those connecting to the system after August 24, 1971. Even assuming that to be true, however, we would not be justified in striking down this ordinance. The era in which the courts sat as superlegislatures, upholding laws perceived as wise and declaring unconstitutional those which they thought foolish, is happily over. As Mr. Justice Douglas said, speaking for a unanimous Supreme Court in *Lehnhausen v. Lake Shore Auto Parts, supra,* "We could strike down this tax as discriminatory only if we substituted our judgment on facts of which we can be only dimly aware for a legislative judgment that reflects a vivid reaction to pressing fiscal problems." 410 U.S. at 365, 93 S.Ct. at 1006.

Accordingly, for all the reasons discussed above, we find for the defendant City of Jacksonville and hold that Section 614.506 of Ordinance 71–747–334 is constitutional; the relief sought by plaintiffs is denied. The Clerk shall enter judgment in favor of defendant. This opinion shall constitute our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

So ordered.