Argued and submitted September 24, reversed
December 24, 1979, reconsideration denied January 31,
petition for review denied February 12, 1980 (288 Or 527)

# OREGON STATE HOMEBUILDERS
## ASSOCIATION, et al
### *Respondents,*

*v.*

# CITY OF TIGARD,
### *Appellant.*

## (No. 37-834, CA 12304)

604 P2d 886

Joe D. Bailey, Portland, argued the cause for appellant. With him on the briefs was Gearin, Landis & Aebi, Portland.

Willard E. Fox, Salem, argued the cause for respondents. With him on the brief was Allen, Stortz, Barlow & Fox, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The City of Tigard appeals the decree of the trial court declaring that the City's Ordinance No. 77-26, as amended, is unconstitutional in that it violates the equal protection clause of the Fourteenth Amendment. We reverse.

On March 11, 1977, the City passed Ordinance No. 77-26,[1] imposing what it characterized as "a system development charge [SDC] * * * to implement the

---

[1] The original ordinance reads as follows:

"AN ORDINANCE ESTABLISHING AND IMPOSING A STREET AND TRAFFIC CONTROL SYSTEM DEVELOPMENT CHARGE FOR EXTRA CAPACITY FACILITIES. FIXING AN EFFECTIVE DATE AND DECLARING AN EMERGENCY.

"WHEREAS after appropriate and lengthy review of various traffic engineering reports, fiscal analyses and staff studies, comments and criticism of interested persons and the general public, the City Council has determined that it is reasonable and necessary to enact and impose a street and traffic control system development charge for the purpose of protecting the public health, safety and welfare by imposing costs of extra capacity street facilities upon properties which create additional needs for those facilities.

"NOW, THEREFORE, IN ORDER TO IMPLEMENT THE DECISION DESCRIBED ABOVE, THE CITY OF TIGARD ORDAINS AS FOLLOWS:

"*Section 1: PURPOSE* A system development charge is hereby imposed to implement the installation, construction and extension of extra capacity street facilities and traffic control devices, as defined in section 2 hereof, and shall be charged to properties which create additional needs for those facilities.

"*Section 2: DEFINITIONS*

"1) Building Permit - Any permit issued by the Building Official in accordance with Title 14 of the Tigard Municipal Code as amended.

"2) Extra Capacity Street Facilities - Those street improvements that are necessary for public health, safety and welfare to increase vehicular traffic capacities to collector or arterial street standards on streets that are classed as collectors or arterials in Section 18.12.100 of the Tigard Municipal Code and/or in the Tigard Community Plan and the Neighborhood Plan supplements thereto. Said improvements include but are not limited to signalization, channelization, widening, drainage work, pedestrian safety, lighting, right of way acquisition, street extensions and railroad crossing protective devices.

"Section 3: SYSTEM DEVELOPMENT CHARGE IMPOSED; RATE REVIEW

"1) A Systems Development Charge is hereby imposed upon all lands within the City of Tigard according to the demands which proposed development of said lands will place upon the collector and arterial street system serving the City of Tigard as follows:

"A.   Single Family Residential Unit having a purchase price of $40,000 but less than $60,000 ........................................................ $300.

"B.   Single Family Residential Unit having a purchase price of over $60,000 .................................................................................. $400.

"C.   Mobile Home Court Space ................................................ $150.

"D.   Multi-Family Residences .......................................... $240/unit.

"E.   Commercial, Industrial and Institutional ............ $50/parking space as required by Section 18.60.120 of the Tigard Municipal Code.

"Section 4: COLLECTION

"1) The System Development Charge is immediately due and payable upon receipt of an application for building permit. The applicant for such permit shall pay and the Building Official shall collect, the applicable System Development Charge prior to issuing any building permit for any new construction and/or additions, alterations or change in use which increases the number of parking spaces required by Section 18.60.120 of the Tigard Municipal Code. The Building Official shall decline to issue any such permits until that charge has been paid in full.

"2) Not withstanding the above, in those cases where application for a building permit is made for a structure which would result in a systems development charge fee in excess of $5,000, the applicant may request a temporary waiver of collection from the City Administrator who is hereby authorized to grant such a temporary waiver. In those instances where such a collection waiver has been granted, the full charge shall be paid prior to issuance of an Occupancy Permit by the City and the Building Official is hereby instructed to decline to issue an Occupancy permit for any structure which has received a temporary waiver until the Systems Development Charge Fee is paid in full on the entire project.

"1) The following properties shall be exempt from the charges imposed in section 3:

"A. City owned land.

"B. Non-profit institutions, following a public hearing before the City Council in order that the Council may find it within the public interest to subsidize the applicant in question by waiving the required System Development Charge.

"C. Any parcel of land which has an established use is exempt from the Systems Development Charge to the extent of any structure then existing on the land or covered by a building permit issued on or before the effective date of this ordinance.

"2) Temporary Exemption. Any parcel of land located within the city on the effective date of the ordinance, for which a valid and complete pending building permit application was filed on or before the effective date or the ordinance, shall be exempt of the structure covered by that pending building permit application.

"3) Discretionary Exemptions

"A. In accordance with the city's adopted Housing Policies and Housing Assistance Plan which generally seeks to encourage the provision of a range of housing types and costs, the City Council hereby determines that it is in the interest of the City to assist and encourage the development of reasonably priced single family housing and that to this end the systems development charge fee is to be modified as follows:

"1. For single family dwellings having a purchase price of $36,000 to $39,999 the fee shall be $225 per unit.

"2. For single family dwellings having a purchase price less than $36,000 the fee shall be $150 per unit.

"The above housing unit purchase prices will be reviewed by the Council annually using information supplied by the Oregon State Housing Division to ascertain that they adequately address the City's established housing policy regarding the provision of adequate amounts and types of housing to meet the needs of low and moderate income persons.

"B. In cases where the Planning Commission, Site Development Plan and Architectural Review Board and/or Planning Director determine that certain public improvements are necessary to protect the public health, safety and welfare before development of a parcel of land may ensue, the cost of any of these required improvements which are deemed extra capacity facilities, as defined in Section 2, shall be a credit against the total system development charge that the developer would otherwise be obligated to pay. In determining those costs which qualify as contributing to extra capacity street facilities, it is understood that each property in the City is considered responsible for provision of a standard local street (Tigard Municipal Code, Section 17.28.040), sidewalk, street lighting (Portland General Electric specifications), and storm drainage. An average cost per lineal foot of a

installation, construction and extension of extra-capacity street facilities and traffic control devices * * *." The ordinance states that the charge shall be made "to properties which create additional needs for those facilities." The rate schedule for the SDC provides for

standard local street will be kept on file by the Public Works Director and updated annually. This cost per lineal foot shall be used as the standard for judging when the cost of required public improvements qualify as a credit against the system development charge.

*"Section 6: FUND CREATION; SEGREGATION AND USE OF REVENUES*

"There is hereby created a dedicated fund entitled Major Street Capital Project Fund. All funds derived from the Systems Development Charge are to be placed in the Major Street Capital Project Fund and be segregated by accounting practices from all other funds of the city; and that portion of the Systems Development Charge calculated and collected on account of street facilities shall be used for no purpose other than those activities necessary to the installing, construction, and extending extra-capacity street facilities as defined in Section 2 of this ordinance. All funds will be expended in acordance with a capital improvements program to be adopted and reviewed annually by the City Council.

*"Section 7: APPEALS*

"Any person who is aggrieved by any decision required or permitted to be made by the City Administrator under this ordinance may appeal that decision to the City Council by filing a written request with the City Recorder, describing with particularity the decision of the City Administrator from which the person appeals. In considering the appeal, the Council shall determine whether the City Administrator's decision is correct and may affirm, modify, extend, or overrule that decision.

*"Section 8: SCOPE*

"The Systems Development Charge provided in this ordinance is separate from and in addition to any applicable tax, assessment, charge, or fee otherwise provided by law.

"Construction. The rules of statutory construction provided in ORS 174.010 to 174.110 are adopted and by this reference made a part of this ordinance.

*"Section 9: EMERGENCY CLAUSE*

"The earliest imposition of the provisions of this ordinance is necessary to derive necessary revenues, to promote fairness by imposing costs upon properties which cause expenses to be incurred, and to preserve the peace, health, and safety of the public. Accordingly, an emergency is declared and this ordinance will take effect immediately upon its passage by the Council and approval of the mayor."

It was amended by Ordinance 77-37, which provided a credit for certain properties, not relevant to our determination.

a flat fee per mobile home space and per unit in multi-family residences, and a flat rate per parking space required by zoning code for commercial, industrial and institutional properties. For single family residences, the rate is graduated according to the proposed purchase price of the house.

The SDC is collected through the building permit system and is payable upon application for a building permit. Under the ordinance, money so collected is segregated in a dedicated fund to be used for no purpose other than those activities necessary to the installing, constructing and extending extra capacity street facilities as defined in the ordinance. The funds must be expended "in accordance with a capital improvements program to be adopted and reviewed annually by the City Council."

It is apparent from the foregoing summary of the relevant provision of the ordinance that while it purports to impose the burden of the change "upon all lands within the City of Tigard according to the demands which proposed development of said lands will place upon the collector and arterial street system," the schedule of charges does not adhere strictly to the stated intention. It is difficult to envisage a relationship between the purchase price of a single family home and the burden which the construction of that home will have on arterial or collector streets. It is this lack of reasonable relationship which persuaded the trial judge that the ordinance ran afoul of the equal protection clause.

As we view the ordinance, however, there are two questions: (1) whether there is a rational basis for the imposition of the charge only on newly developed land, and if so, (2) whether there is a rational basis for the schedule of charges imposed.

Our review of the ordinance is limited to the minimal scrutiny test applicable to legislation in the areas of economics and social welfare. *See Dandridge*

*v. Williams*, 397 US 471, 90 S Ct 671, 24 L Ed 2d 663 (1970). That test requires only that there be some rational basis for the classification made by the statute, and "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 US 420, 426, 81 S Ct 1101, 81 S Ct 1153, 81 S Ct 1218, 6 L Ed 2d 393 (1961). As noted in *New Orleans v. Dukes*, 427 US 297, 303-4, 96 S Ct 2513, 49 L Ed 2d 511 (1976):

> "* * * the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines * * * in the local economic sphere it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment."

The ordinance may not be invalidated simply because the classifications made are imperfect; the City is not required to "choose between attacking every aspect of a problem or not attacking the problem at all," *Dandridge v. Williams*, 397 US 471, 487 (1970). Those who attack the legislation have the burden of proving the unreasonableness of the classifications made therein. *See Williams v. Schrunk*, 19 Or App 165, 527 P2d 1 (1974).

I

The SDC is a method employed by the City to produce revenues and the City properly views it as a tax.

> "Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 US 356, 358 (1973). (Footnote omitted.)

*See also Kahn v. Shevin*, 416 US 351, 94 S Ct 1734, 40 L Ed 2d 189 (1974). The purpose of the tax,

generally, is to improve and extend arterial and collector streets as the pressure of increased population may require. On the face of it, imposing the tax burden on property as it is developed is not without reason because it may be assumed that increased automobile traffic will follow, thereby requiring increased capacity of the streets to handle it.

A closely analogous case is *Ivy Steel and Wire Co., Inc. v. City of Jacksonville*, 401 F Supp 701 (MD Fla 1975). That case involved a city ordinance requiring payment of a water pollution control charge by all persons connecting to the Jacksonville sewer system after a specified date. It was not a connection charge or a use charge, but a means of raising revenue, much like the SDC involved in the ordinance at issue here. It was upheld against challenge on equal protection and due process grounds. The court there found that the City of Jacksonville was growing rapidly and that

> "* * * the City Council may well have determined that it was fiscally sound to impose the costs of the accelerated expansion, renewal and improvement of the sewer system onto those who were creating the immediate need for these increased expenditures, namely those who were connecting to the system for the first time. Such a determination is certainly enough to uphold this ordinance." 401 F Supp at 705.

Plaintiffs in that case argued, as do plaintiffs here, that the ordinance unfairly required one group of persons to pay for the benefit and exempted another group who also receive some benefit. That factor, however, did not render the ordinance unconstitutional. Finding the charge much like a tax, the court quoted from *San Antonio School District v. Rodriguez*, 411 US 1, 93 S Ct 1278, 36 L Ed 2d 16 (1973):

> "* * * No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny

lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause." 411 US at 41. (Footnote omitted.)

*See also Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d, 139 (1976). The SDC imposed by the City of Tigard is subject to the same analysis. Imposition of a charge on new construction to pay for improvements to streets which it may reasonably be assumed will be burdened by increased traffic is not without a rational basis.

We conclude, therefore, that it passes constitutional muster.

## II

The varied rate structure for single family residences also meets the constitutional test. Legislation may have more than one purpose, and that appears to be the case with the ordinance challenged here. Not only did the city desire to raise revenue to improve collector and arterial streets as undeveloped property was developed, it also desired, in imposing the SDC, to encourage reasonably priced single family housing. While the ordinance is not a model of clarity or logical organization, it states explicitly the basis upon which it was determined that the graduated fee schedule was appropriate:

> "In accordance with the city's adopted Housing Policies and Housing Assistance Plan which generally seeks to encourage the provision of a range of housing types and costs, the City Council hereby determines that it is in the interest of the City to assist and encourage the development of reasonably priced single family housing * * *."

While the difference in the SDC for houses with a purchase price over $60,000[2] may not be of great

---

[2] The trial court's conclusion that the ordinance violates the equal protection clause apparently was based, at least in part, on that court's finding that the ordinance did not provide for any charge for houses under $40,000. Although the organization of the ordinance is confusing, it appears to provide for a systems development charge for all single family

significance, we cannot say that the determination by the City Council that the graduated fee schedule would contribute to their stated goal is without any basis in reason.

Accordingly, the decree of the trial court is reversed.

Reversed.

---

residences, with the charge ranging from $150 for houses with a prospective purchase price of less than $36,000, to $400 for houses intended to sell for over $60,000. The purported charges for houses under $40,000 are contained in a section entitled "Exemptions." We express no opinion as to whether there is any charge for houses under $40,000 because even if the ordinance does not impose the SDC for houses under $40,000, the outcome would be the same.