Argued and submitted May 18, affirmed July 13,
reconsideration denied August 20,
petition for review denied October 20, 1981 (291 Or 771)

VAIL et al,
*Appellants,*
*v.*
CITY OF BANDON et al,
*Respondents.*

STADELMAN,
*Appellant,*
*v.*
CITY OF BANDON et al,
*Respondents.*

(No. 80-801, 80-802, CA 19218)

630 P2d 1339

Kent W. Day, Coos Bay, argued the cause for appellants. With him on the briefs was McInturff, Thom & Collver, Coos Bay.

Roger Gould, Coos Bay, argued the cause for respondents. With him on the brief were David A. Dorsey, and Bedingfield, Joelson and Gould, Coos Bay.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

### RICHARDSON, P. J.

These are consolidated suits by owners of unimproved real property who seek to enjoin the defendant city from enforcing ordinances which impose higher sewer district assessments on unimproved property than on improved property. The trial court granted the city's motions for summary judgment, and plaintiffs appeal. We affirm.

The city's Ordinance No. 842, section 11(4), was adopted through an initiative measure and took effect on February 27, 1979. As originally enacted, it provided in relevant part:

"* * * [I]n all instances in which an improvement district contains at least forty (40%) per cent unimproved property (property on which no residential or commercial building is located) the council shall first obtain an assessment figure by dividing the total improvement cost by the number of front feet located within the district, then reduce the resulting figure for each parcel of improved property by one-half (1/2). The reduced figure shall be the assessment on the already improved property. The total of the one-half reduced figure shall then be added to the base assessment of the unimproved properties on a proportionate basis by dividing this total by the number of front feet within the district of unimproved property. The resulting sum shall be the assessment on the unimproved property. The assessments obtained following the procedure set forth in this subsection may be reduced further if assessments are also made on other benefited property not abutting the improvements constructed."

On March 4, 1980, the subsection was amended by the city's common council "by striking the words 'number of front feet' and inserting in their place the words 'number of front feet, amount of square feet, or other equitable method determined by the Council.'" The following month, the council adopted ordinances Nos. 1042 and 1043, levying special assessments in accordance with the amended Ordinance No. 842 formula in the respective sewer districts where plaintiffs' properties are located.

Plaintiffs' arguments fail to segregate or distinguish two very different issues: first, whether the legislative assessment formula of the ordinances is impermissibly

discriminatory or otherwise unlawful; and, second, whether the particular special assessments levied on plaintiffs' properties were made consistently with the procedural and evidentiary requirements to which such quasi-judicial determinations are subject. *See, e.g., Western Amusement v. Springfield,* 274 Or 37, 545 P2d 592 (1976). Our review of the first issue would be subject to a minimal scrutiny test, essentially equivalent to the rational basis test which applies when tax or other socio-economic legislation is challenged on equal protection grounds. *See Or. State Homebuilders v. City of Tigard,* 43 Or App 791, 604 P2d 886 (1979), *rev den* 288 Or 527 (1980). Our review of the second issue would be for substantial evidence to support the city's determination of the existence and amount of benefit to the assessed property. *See Western Amusement v. Springfield, supra; Hiransomboon v. City of Tigard,* 35 Or App 595, 582 P2d 34 (1978), *rev den* 285 Or 1 (1979). We do not suggest that the two issues *cannot* be raised in a single proceeding; however, it is unclear from their arguments which issue or issues these plaintiffs seek to raise on appeal. Be that as it may, we conclude that plaintiffs' pleadings in the trial court were sufficient to raise only the first issue, and, therefore, only that issue can be considered here.

Plaintiffs' complaints allege, as material:

"That the assessment provisions of the aforedescribed Ordinance No. 1042 [and 1043] should be declared by the Court to be void and the Defendants should hereafter be restrained from enforcing such ordinance[s] and from applying the assessment procedures set forth in Ordinance No. 842, Section 11, subparagraph 4, for the following reasons:

"(a)   That the apportionment of the cost of the subject property between 'improved' and 'unimproved' property is unjust and unequitable, relying solely on an arbitrary and capricious formula.

"(b)   That the unimproved property within the subject district is being required to bear an unfair share of the cost of the improvement, the assessment having no relationship to the relative benefits to the properties within the district.

"* * * * *

"(d) That to enforce the ordinance as presently constituted would produce irreparable damage to the Plaintiffs and to all other owners of unimproved property within the district.

"* * * * *."

We understand these allegations to challenge the disparity in treatment under the three ordinances between improved and unimproved property within a particular district. We do *not* understand the allegations to raise any question about the city's determinations that plaintiffs' properties will be benefited by the improvements for which the assessments were levied, or the amount of the specific assessments.[1]

Plaintiffs' basic contention is that the formula by which unimproved property in the sewer districts is assessed more heavily than improved property is "arbitrary," "capricious" and "abusive." In light of the authority plaintiffs cite and the thrust of their arguments, we understand that terminology to mean that the ordinances which embody the formula discriminate between the two classes of property in an impermissible way. As noted above, the test for determining whether classifications of the kind in question are supported by a rational basis is the so-called "minimum rationality" standard. *See Or. State Homebuilders v. City of Tigard, supra; Clinkscales v. Lake Oswego,* 30 Or App 851, 568 P2d 696, *rev den* 280 Or 683 (1977). The minimal nature of the scrutiny under that test is illustrated by the fact that virtually no special assessment legislation in Oregon has ever failed it. In *Clinkscales,* we upheld a sewer financing plan which assessed commercial property differently from residential property. In *Or. State*

---

[1] It appears from the record of the city common council proceedings, portions of which were introduced as supporting exhibits to the parties' summary judgment motions, that plaintiffs raised little question in the city proceedings about the specific assessments on their property. One of the plaintiffs did seek to have a number of lots exempted from assessment, apparently on the ground that the lots would not be benefited by the sewer improvements. The city excluded all but three of those lots from the levy ordinance, and plaintiffs do not complain specifically on appeal about the city's actions regarding any of the lots.

We also note that it is questionable whether the quasi-judicial actions involved in the specific special assessment levies can be challenged in these injunction suits, rather than through a writ of review. *But see, Western Amusement v. Springfield,* 274 Or 37, 42, 545 P2d 592 (1976).

*Homebuilders,* we sustained a development charge which fell disproportionally on newly developed property and on expensive houses, notwithstanding our observation that

"* * *[i]t is difficult to envisage a relationship between the purchase price of a single family home and the burden which the construction of that home will have on arterial or collector streets. It is this lack of reasonable relationship which persuaded the trial judge that the ordinance ran afoul of the equal protection clause." 43 Or App at 797.

In holding that there was a rational basis for the disparities in the charges, we cited authority which is quite apposite here, and stated:

"A closely analogous case is *Ivy Steel and Wire Co., Inc. v. City of Jacksonville,* 401 F Supp 701 (MD Fla 1975). That case involved a city ordinance requiring payment of a water pollution control charge by all persons connecting to the Jacksonville sewer system after a specified date. It was not a connection charge or a use charge, but a means of raising revenue, much like the SDC [system development charge] involved in the ordinance at issue here. It was upheld against challenge on equal protection and due process grounds. The court there found that the City of Jacksonville was growing rapidly and that

" '* * * the City Council may well have determined that it was fiscally sound to impose the costs of the accelerated expansion, renewal and improvement of the sewer system onto those who were creating the immediate need for these increased expenditures, namely those who were connecting to the system for the first time. Such a determination is certainly enough to uphold this ordinance.' 401 F Supp at 705.

"Plaintiffs in that case argued, as do plaintiffs here, that the ordinance unfairly required one group of persons to pay for the benefit and exempted another group who also receive some benefit. That factor, however, did not render the ordinance unconstitutional. Finding the charge much like a tax, the court quoted from *San Antonio School District v. Rodriguez,* 411 US 1, 93 S Ct 1278, 36 L Ed 2d 16 (1973):

" '* * * No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal

schemes become subjects of criticism under the Equal Protection Clause.' 411 US at 41. (Footnote omitted.)

"*See also Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976). The SDC imposed by the City of Tigard is subject to the same analysis. Imposition of a charge on new construction to pay for improvements to streets which it may reasonably be assumed will be burdened by increased traffic is not without a rational basis." 43 Or App at 799-800.

*See also, Wing v. City of Eugene,* 249 Or 367, 437 P2d 836 (1968); *Stanley v. City of Salem,* 247 Or 60, 427 P2d 406 (1967).

■ The Supreme Court has recognized that whether particular land will be benefited by a particular improvement is not contingent on the present use of the land. *See Western Amusement v. Springfield, supra,* 274 Or at 44-45, and authorities cited therein. We find no difference between a disparity in the tax treatment of improved and unimproved land, as here, and a disparity in the treatment of newly developed land and land with longer-standing improvements, as in *Or. State Homebuilders.*

■ The city argues that the disparity in the assessments of improved and unimproved property is justified because the sewage facilities will be of greater benefit to unimproved land which has no *existing* sewage or septic facilities; and because the potential for increase in the value of the unimproved land is greater than the potential appreciation of already developed land, and the benefit will therefore ultimately be greater. We cannot say, in light of the cited cases, that these bases for assessing improved and unimproved property differently do not survive the minimal rationality test.[2]

■ Plaintiffs also appear to make what is, in essence, a due process argument. They contend that the formula under Ordinance No. 842, section 11(4) controls the city's assessment decisions in the districts where it applies and

---

[2] Plaintiffs' arguments are addressed only to the disparity in the assessments upon improved and unimproved property within individual districts. Plaintiffs do not contend that the ordinances discriminate impermissibly by requiring the enhanced assessments on unimproved property *only* in districts where 40 percent or more of the property is unimproved. That question that plaintiffs do not raise may be a closer one than the question they do present.

that the formula "does not require or allow the council to determine which property is benefited, nor does it require the council to apportion the costs between the properties that are benefited." Hence, according to plaintiffs, the city cannot make meaningful quasi-judicial assessment decisions, because the substance of the decisions is preordained by the requirement of the ordinance.[3]

As we read subsection 11(4), it does not preclude the common council from deciding whether particular property will be benefited by an improvement; the formula *presumably* applies only to the assessment of benefited property, and the concluding sentence of the subsection bears out that presumption by referring to reductions in the base assessments "if assessments are also made on *other* benefited property not abutting the improvements constructed." (Emphasis added.) Further, subsection 11(4) as amended permits apportionment of the amount of assessments among the benefited unimproved properties in a district "on a proportionate basis," determined "by the number of front feet, amount of square feet, or other equitable method determined by the council * * *." We conclude that Ordinance No. 842, section 11(4) provides the city with sufficient flexibility to make quasi-judicial determinations of the existence and amount of benefit to particular properties.

It is of course true that there is a separate apportionment of assessments upon improved and unimproved properties and that the ordinance does predetermine that the amount of benefit ascribed to unimproved property will be greater than the benefit to otherwise comparable developed property. Those facts do not make the assessment formula violative of due process any more than they give rise to an equal protection violation. The formula which ascribes greater benefit to unimproved than improved property generally may properly be applied by the city in

---

[3] It is questionable whether this argument can be considered, in view of the fact plaintiffs have not preserved any issue relating to the specific assessment decisions affecting their own properties. However, we resolve the question in favor of reaching the argument; in our view, the argument pertains more to the facial validity of the ordinance's assessment formula than to the specific assessments.

determining the amount of benefit to particular property without violating due process.

Affirmed.