## DAMES,
*Respondent,*

*v.*

## The CITY COUNCIL FOR THE CITY OF FOREST GROVE et al,
*Appellants.*

(No. 40-765, CA A21836)

652 P2d 839

Ronald C. Holloway, Hillsboro, argued the cause for appellants. With him on the brief was Frost, Hall, Holloway & Lewis, Hillsboro.

Mervin W. Brink, Hillsboro, argued the cause for respondent. With him on the brief was Brink, Moore, Brink & Peterson, Hillsboro.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This is a writ of review proceeding by which petitioner Dames challenges the validity of a Forest Grove ordinance imposing local improvement district assessments. The city appeals from the trial court's order vacating the ordinance.

In January, 1978, the city council initiated the formation of a local improvement district to provide street, sidewalk and storm drainage improvements for property fronting or having access on 19th Avenue. The city engineer later filed a report in which he recommended a method for assessing property in the district for the improvement costs. After appropriate proceedings in December, 1978, the city council adopted the engineer's report and authorized the construction of the improvements.

As stated in the report, the assessment formula is:

"a) Total number of dwelling units receives 50% of total assessment.

"b) Total street frontage (ft.) receives 25% of total assessment.

"c) Total area (acre) within improvement district receives 25% of total asesment.

"*Dwelling units are assessed by the following criteria:*

"*One dwelling unit per:*

"*1. Each existing single-family dwelling situated on improved residential property; or*

"*2. Each 5000 square feet of land area of unimproved property, regardless of zoning.*" (Emphasis added.)

In December, 1979, after the improvements were completed, the city council adopted a resolution declaring the cost of the improvements, proposing assessments and directing notices of the proposed assessments to be given to property owners.

Petitioner owns a large, unimproved lot in the district. Because his lot is unimproved, it was treated for assessment purposes as containing one dwelling unit for each 5000 square feet of area, or a total of six dwelling units. Another property owner in the district owns a comparably-sized lot, which contained one single-family

dwelling unit at the time the district was formed and at the time the assessment formula was adopted. In the summer of 1979 construction was commenced on a 14-unit complex on the second owner's property. Nevertheless, the later assessment of that property was based on the one pre-existing unit rather than on the number of units on the property at the time the ordinance imposing the assessment was adopted. As a result, the assessment of petitioner's property was approximately three times greater than that of the property of the other owner.

Petitioner appeared before the city council at a January, 1980, hearing held to consider objections to the proposed assessments. Although various members of the council agreed with petitioner that the application of the assessment method was unfair in his case, the council apparently took the view that the formula should not be abandoned to meet particular contingencies, and the proposed assessments were adopted by Ordinance No. 80-2. Petitioner then brought this proceeding, contending that the city's action was "palpably arbitrary, unjust, oppressive, and capricious" and violated petitioner's due process and equal protection rights as well as the requirement of the city's Ordinance No. 975 that assessments be made in accordance with a "just and reasonable method * * * consistent with the benefits derived."

■ ■ The trial court appears to have agreed with petitioner that the assessment *method* as applied here was "palpably arbitrary." We do not. *See Vail v. City of Bandon,* 53 Or App 133, 630 P2d 1339, *rev den* 291 Or 771 (1981).[1] However, we understand petitioner's pleading and his arguments on appeal to raise a second issue—whether the city complied with the procedural requirements of Ordinance No. 975 in assessing the property in the district.

---

[1] We said in *Vail:*

"* * * [T]he test for determining whether classifications of the kind in question are supported by a rational basis is the so-called 'minimum rationality' standard. * * * The minimal nature of the scrutiny under that test is illustrated by the fact that virtually no special assessment legislation in Oregon has ever failed it. * * *" 53 Or App at 137. (Citations omitted.)

We did not intend that statement as a challenge to cities to adopt legislation which *does* fail the test.

## Section 7 of Ordinance No. 975 provides:

"If the Council determines that the local improvement shall be made, when the estimated cost thereof is ascertained on the basis of the contract award or city departmental cost, or after the work is done and the cost thereof has been actually determined, the Council shall determine whether the property benefited shall bear all or a portion of the cost. The recorder or other person designated by the Council shall prepare the proposed assessment to the respective lots within the assessment district and file it in the appropriate city office. Notice of such proposed assessment shall be mailed or personally delivered to the owner of each lot proposed to be assessed, which notice shall state the amounts of assessment proposed on that property and shall fix a date by which time objections shall be filed with the recorder. Any such objection shall state the grounds thereof. The Council shall consider such objections and may adopt, correct, modify or revise the proposed assessments, and shall determine the amount of assessment to be charged against each lot within the district, according to the special and peculiar benefits accruing thereto from the improvement, and shall by ordinance spread the assessments."

*See also* ORS 223.389.

Petitioner states that the council had authority under section 7 to "adopt, correct, modify or revise the proposed assessments," *see also* section 17 of the ordinance,[2] but that the council

"* * * declined to do so in spite of evidence presented by Petitioner that the nonvacant lots were developable and that the assessment method was working the inequity of allowing another owner to go unassessed for 13 existing dwelling units. The record is not as clear as [the city] urge[s] on the issue of whether the City Council members felt they had a choice and could correct the inequities in the assessment method at the time of the hearing, or

---

[2] Section 17 provides:

"Whenever any assessment, deficit or reassessment for any improvement which has been made by the City has been, or shall be, set aside, annulled, declared or rendered void, or its enforcement restrained by any court of this state, or any federal court having jurisdiction therefor, or when the Council shall be in doubt as to the validity of such assessment, deficit assessment, or reassessment, or any part thereof, then the Council may make a reassessment in the manner provided by the laws of the State of Oregon."

whether they simply chose not to do so. But it does smack of gross unfairness when at the very hearing at which objections are to be voiced, Petitioner was told that the final decision was actually made years ago * * *."

The city argues that:

"* * * The City in assessing and allocating the cost of the L.I.D. [district] had the power and right to compute assessments for individual properties at any time after initiation of the L.I.D. Local improvements by nature involve an ongoing, lengthy process and assessments must be calculated in advance to enable a city to have preliminary statements of assessments available to secure financing. The L.I.D. in question had been initiated nearly 16 months prior to the issuance of building permits for Tax Lot 5700. During this period, considerable time, effort and money was spent in formulating the L.I.D., computing assessments and issuing general obligation warrants. If municipalities are required to recompute assessments whenever the factual context changes, the local improvement process will grind to a halt. * * *"

Pursuant to the provisions of section 7 of ordinance 975, the city had the power to adopt a proposed assessment any time after initiation of the district. In adopting the engineer's report, which included the assessment formula, the city adopted a proposed assessment for properties within the district based on the status of individual parcels at that time. Although proposed assessments are subject to remonstrance, the city has the power to determine the factual basis of the proposed assessments at an earlier time than the date the assessment amounts are formally adopted.

Local improvements, by their very nature, involve an ongoing, more or less lengthy process, and proposed assessments must be calculated in advance to enable a local government to have a preliminary statement of assessments in order to secure legal approval and financing. If municipalities were required to recompute assessments whenever the factual context changes, the local improvement process would be seriously impeded. Section 17 of the ordinance gives the city the discretionary power to reassess property when circumstances change, but not an absolute duty

to do so. The court cannot order the city to exercise its discretion in changing the assessment.[3]

The court erred in declaring Ordinance No. 80-2 invalid.

Reversed.

---

[3] The city states in its brief:

"* * * On January 22, 1979, the City authorized and ordered construction of the improvement, assessment of the properties and issuance of general obligation warrants (at this time only one dwelling unit existed on Tax Lot 5700 [the second owner's property]). On May 15, 1979, building permits were issued for construction of dwelling units on Tax Lot 5700 and on January 28, 1980, when the City approved Ordinance No. 80-2, 14 dwelling units existed on Tax Lot 5700."