Argued May 19, affirmed August 2, reconsideration denied September 12, 1978, petition for review denied January 16, 1979

HIRANSOMBOON et al, *Appellants,*
*v.*
CITY OF TIGARD, *Respondents.*
(No. 37464, CA 9331)

582 P2d 34

Earl H. Mickelsen, Portland, argued the cause and filed the briefs for appellants.

Joe D. Bailey, Portland, argued the cause for respondents. With him on the brief was Gearin, Landis and Aebi, Portland.

Before Schwab, Chief Judge, and Johnson and Gillette, Judges.

GILLETTE, J.

## GILLETTE, J.

This is a proceeding to review a special assessment levied by the City of Tigard to pay for street repair and improvement.

Petitioners Hiransomboon sought a writ of review in the circuit court concerning their $9,000 assessment. The circuit court upheld the assessment. We affirm.

In the fall of 1974, the Tigard City council proposed the creation of a local improvement district (L.I.D.) for the purpose of making improvements and repairs to Hunziker Street. On November 18, the city mailed a letter to affected property owners informing them of the proposed street improvements, the estimated cost, and the city's desire to arrive at an equitable method of assessment. The owners were invited to meet, which they did,[1] to discuss the matter before any final proposals were made. The council passed a resolution on December 9, 1974, indicating its intention to create the L.I.D. and adopting the city engineer's plans and estimates of total and apportioned costs.[2] On December 31, the city council sent an informal letter informing affected property owners of the public hearing on the proposed L.I.D. scheduled for January 15, 1975. The letter stated that Hunziker Street is "badly in need of improvement to enable it to carry the traffic presently using it," and advised the property owners of the proposed plans and estimated total costs of the improvement. The letter also stated that the plan and estimated assessment of each individual

---

[1] The meeting of interested property owners was held on November 21. They apparently met with the city administrator (or his representative—the record is unclear) who reported back to the city council at its meeting on November 24 that 16 property owners, representing 88% of the area, were present and were in favor of an assessment method based on assessed valuation. Accordingly, city staff proposed at the same meeting to "prepare papers for council consideration." Unfortunately, the record does not include those papers or indicate that the council actually adopted the method discussed at the November 24 meeting.

[2] This preliminary assessment summary submitted by the city engineer estimated petitioners' assessment at $5,807.66.

property owner were available for their inspection at city hall. Formal notice of the public hearing appeared in the newspaper January 2 and January 9, 1975. At the January 13 hearing, the city director of public services and facilities discussed the project and assessment method and estimated cost to owners. The record indicates that only one person testified in opposition to the project. At the close of the public meetings, the city council authorized by ordinance the Hunziker Street improvements.

After bids were received in April, 1975, the city realized that the total costs would be approximately $55,000 more than had been anticipated. The city informed the property owners, some of whom met with the city administrator on May 12 and agreed to go ahead with the L.I.D. despite upward costs.[3]

The project was completed in November, 1976, and assessment notices were mailed to property owners in December, 1976. Petitioners filed an objection which the city council overruled. Petitioners then sought a writ of review of the assessment in circuit court. From the circuit court's approval of the assessment, petitioners appeal.

■ Although petitioners in their brief make a mild argument to the contrary, the true issue here is not *whether* the property was benefited. Clearly, it was. *See Chrysler Corp. v. City of Beaverton,* 25 Or App 361, 365-366, 549 P2d P2 678, *rev den* (1976). Rather, petitioners real challenge to the amount of their assessment is on the ground that it is disproportionate to the benefits derived by their property when compared with benefits derived by the other property owners. All that is required, however, is that there be "substantial evidence" supporting the amount of the

---

[3]The record is silent with respect to whether petitioners were among those present at the meeting. The record does show, however, that petitioners were informed the meeting would take place. Nowhere in the record is there any indication that petitioners opposed continuing with the project.

assessment, and "substantial evidence" is " 'a variable.' " *Western Amusement v. Springfield,* 274 Or 37, 43, 545 P2d 592 (1976) (*quoting* 4 Davis, Administrative Law, 126, § 29.02 (1958)).

■■ With respect to the amount of the assessment, which is based upon the benefit derived,

"* * * [T]he city council's determination * * * [of] the amount of the benefit is conclusive unless the court can say that the city's action was palpably arbitrary and abusive." *Gilbert v. City of Eugene,* 255 Or 289, 292, 465 P2d 880 (1970). *Accord, Western Amusement v. Springfield, supra; Boyle v. City of Bend,* 234 Or 91, 101-102, 380 P2d 625 (1963).

Petitioners' burden in the present case is thus to show arbitrariness, *i.e.,* a complete lack of substantial evidence that the proportionate benefit derived by their property is at least reasonably related to the proportion of the total cost of the L.I.D. which their assessment represents.

With this in mind, we address petitioners' five assignments of error, four of which merit discussion. Petitioners first argue that the trial court erred in finding that there was substantial evidence to support the assessment on their property. The crux of their complaint is that because the record does not designate the formula used by the city in determining the amount to be assessed to each individual property owner, the record lacks substantial evidence to support the assessment. Petitioners' third assignment of error is a variation of the first: Petitioners contend that because the amount they were assessed was obviously not the result of any of the formulas in the record and because the city made no findings that the formula used was equitable, nor gave any reasons for using a method different from the original list of six, "it may properly be concluded that the actions of the Council must have been arbitrary."

■ We agree that the inclusion of the assessment formula might be helpful for purposes of review where

the claim is that the amount of the assessment is arbitrary. We note, however, at the outset, that petitioners failed to request this information when given the opportunity,[4] nor did they complain in the writ of review proceeding below that they were prejudiced by the lack of this information. Petitioners will not be heard to complain about the lack of the assessment formula for the first time on appeal.

■ It does not appear that the city acted arbitrarily in any event. The documents proffered by the city in the return to the writ include a list of six assessment methods originally considered by the city, none of which was eventually used. Instead, the result of the November 21 meeting of the property owners indicated that the property owners favored a seventh method (the "Fred Fields" method), based on assessed valuation of property. This information was brought to the attention of the city council and the record suggests that this is the method finally used by the council to determine assessment amounts. The record does not indicate precisely what the formula was, other than that it was based on assessed valuation of property, and that this approach was favored by the majority of the property owners.

The city council's attention to the concern of the property owners does not suggest an arbitrary action.

Underlying petitioners' assignments of error is their complaint that there are no reasons given for the discrepancy between the city council's original estimate of their assessment at $5,807 in December, 1974, and their final assessment in December, 1976, of $9,146.28. To the contrary, the record makes clear the reasons: there was a change in assessment methods at the request of the property owners and the total cost of the project was $213,200—almost $36,000 more than the original estimate. Each property owner was ultimately assessed a greater amount than had originally

---

[4]Petitioners were given the opportunity to request additional information at the time defendants returned the writ, but declined to do so.

been intended. We are unable to see how petitioners were prejudiced by the assessment formula.

■ Petitioners' next assignment of error is that the trial court erred in not considering petitioners' contention that the proceedings following the receipt of bids were improper. This issue arose for the first time in the oral argument before the trial judge in the circuit court; it was not alleged in the petition for writ of review. The trial court was correct in refusing to consider it. *Cf. Peterson v. Lake Oswego,* 32 Or App 181, 574 P2d 326 (1978).

■ Petitioners' final assignment of error is that the trial court incorrectly viewed an assessment as a legislative function and thereby improperly limited its scope of review.

Levying a special assessment is correctly classified as a quasi-judicial function; it nonetheless has aspects of a legislative function. *See Western Amusement v. Springfield, supra,* at 41-42; *Boyle v. City of Bend,* 234 Or 91, 101-02, 380 P2d 625 (1963). Whatever it is called, a determination to levy an assessment cannot be sustained unless supported by substantial evidence. *Western Amusement v. Springfield,* supra, at 43; ORS 34.040. The trial judge's opinion makes it clear the right test was applied:

"The only question before this court in reality is, was [*sic*] there findings and, if so, was there some substantial evidence to support such findings. This court finds that both questions should be answered in the affirmative."

Petitioners have failed to meet their burden of showing that the "city council's action was palpably arbitrary and abusive."

Affirmed.