Argued and submitted February 11, reversed and assessment reinstated September 9, reconsideration denied November 27, petition for review denied December 22, 1987
(304 Or 548)

# SCHOOL DISTRICT NO. 3J,
## *Respondent,*

*v.*

# CITY OF WILSONVILLE,
## *Appellant.*

## (84-12-165; CA A39158)

742 P2d 59

Michael E. Kohlhoff, Wilsonville, argued the cause and filed the briefs for appellant.

Paul D. Schultz, Oregon City, argued the cause for respondent. With him on the brief was Hibbard, Caldwell, Bowerman, Schultz & Hergert, P.C., Oregon City.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this writ of review proceeding, the City of Wilsonville appeals from the circuit court's judgment voiding a special road improvements assessment as to property owned by respondent school district. We review pursuant to ORS 223.401 and ORS 34.040 and reverse.

During early 1981, three property owners along Wilsonville Road proposed the development of their properties, approval of which was conditioned on the improvement of that road. On June 1, 1981, one of the owners filed a petition to form a Local Improvement District (LID) for the improvement of the road. After hearing testimony and reviewing engineering reports, and pursuant to ORS 223.387 *et seq,* the city council formed LID No. 6, which includes the properties of the landowners seeking improvement of Wilsonville Road and 60 acres of undeveloped school district property known as Tax Lot 100. The district objected to the inclusion of Tax Lot 100. On October 15, 1982, the city adopted the recommendations of the Board of Viewers for the apportionment of the assessment, and on November 5, 1984, it adopted an ordinance authorizing the city recorder to establish a lien docket.

The circuit court reversed the city's decision and declared the assessment against the district null and void on the ground that, without just cause or substantial evidence, the city had excluded property from the LID that was "specifically" benefited by the improvement. The city contends that its decision forming the LID boundaries is based on substantial evidence and should be reinstated.

The circuit court reviewed pursuant to ORS 223.401:

"Notwithstanding any of the provisions of ORS 223.387 to 223.399, owners of any property against which an assessment for local improvements has been imposed may seek a review thereof under the provisions of ORS 34.010 to 34.100."

ORS 34.040 provides:

"The writ [of review] shall be allowed in all cases where the inferior court * * * or tribunal * * * *in the exercise of judicial or quasi-judicial functions* appears to have:

"(1) Exceeded its jurisdiction;

"(2) Failed to follow the procedure applicable to the matter before it;

"(3)   Made a finding or order not supported by substantial evidence in the whole record;

"(4)   Improperly construed the applicable law; or

"(5)   Rendered a decision that is unconstitutional, to the injury of some substantial interest of the plaintiff, and not otherwise. The fact that the right of appeal exists is no bar to the issuance of the writ." (Emphasis supplied.)

Any property owner whose property has been specially assessed may seek review. ORS 223.401. The school district does not directly challenge its individual assessment. Rather, it argues that the cost of the improvement has not been distributed widely enough, because certain benefited properties were wrongly excluded from the LID. Although neither party raised the question, we have a duty to determine whether the circuit court had jurisdiction to review this matter by writ of review. Accordingly, at oral argument we raised the question whether the city's fixing of the LID boundaries is a judicial or quasi-judicial function that is subject to review under ORS 34.040.

■     There is extensive authority dealing with the various aspects of the special assessment process. In *Stanley v. City of Salem,* 247 Or 60, 427 P2d 406 (1967), the Supreme Court stated that a city's power to determine that an improvement is to be made and that an assessment will be imposed is strictly legislative; on the other hand, it stated that the power to determine that certain property owners have been benefited by an improvement, although initially in the city council, is subject to judicial review. *See Western Amusement Co., Inc. v. City of Springfield,* 274 Or 37, 42, 533 P2d 824 (1976). *Stanley* involved a question of whether property within a created district had been benefited by the improvement. The court concluded that there was evidence to support the city's finding of benefit. It held:

"[P]laintiffs have not overcome the weighty presumption that the action of the city council *in fixing the assessment district* and apportioning the costs within such district is correct." 247 Or at 67. (Emphasis supplied.)

Apparently, the court treated the process of fixing the boundaries of the assessment district as a part of the determination of benefit and, therefore, as subject to judicial review. Although the opinion does not deal with the question of

whether a decision to exclude certain properties from an LID is quasi-judicial, it follows that it must be, because a decision fixing an assessment district necessarily involves a decision to include certain properties and to exclude others.

Earlier cases suggested that the process of fixing and prescribing an improvement district is a legislative function. *King v. Portland,* 38 Or 402, 62 P 2 (1900), *aff'd on other grounds* 184 US 61, 22 S Ct 290, 46 L Ed 431 (1901). Even under that view, however, the process of establishing a district did not entirely escape judicial scrutiny. In *St. Benedict's Abbey v. Marion County,* 50 Or 411, 93 P 231 (1908), the court recognized that the legislature's determination of district boundaries could be overturned by the court if the legislature had exceeded its constitutional authority. In *Raz et ux v. City of Portland et al,* 203 Or 285, 280 P2d 394 (1955), the court stated that, although it is not the function of the judiciary to substitute its judgment for that of the city on matters requiring the exercise of engineering expertise, a judicial question could be presented by the creation of a district if it were obvious that no benefit existed to the property included within the district.

Notwithstanding some apparent confusion, we conclude that the process of determining LID boundaries is sufficiently related to the process of determining which properties have benefited from an improvement to justify its characterization as quasi-judicial and to subject it to review by writ of review.

■ In reviewing a city's determination that property has received a special benefit from an improvement, courts have limited their review to the question of whether the city acted arbitrarily. *Western Amusement Co., Inc. v. City of Springfield, supra; Wing v. City of Eugene,* 249 Or 367, 437 P2d 836 (1968); *Stanley v. City of Salem, supra,* 247 Or at 64; *Boyle v. City of Bend,* 234 Or 91, 38 P2d 625 (1963); *Masters v. City of Portland,* 24 Or 161, 33 P 540 (1893); *Hiransomboon v. City of Tigard,* 35 Or App 595, 582 P2d 34 (1978), *rev den* (1979); *Chrysler Corp. v. City of Beaverton,* 25 Or App 361, 363 n 2, 549 P2d 678, *rev den* (1976). We conclude that the same standard should be applied in reviewing the process of fixing LID boundaries.

A decision is arbitrary if it is not supported by substantial evidence. *Western Amusement Co., Inc. v. City of Springfield, supra; Hiransomboon v. City of Tigard, supra; see* ORS 34.040(3). There is a "weighty presumption" that the city has acted correctly. *Western Amusement Co., Inc. v. City of Springfield, supra; Gilbert v. City of Eugene,* 255 Or 289, 292, 465 P2d 880 (1970); *Stanley v. City of Salem, supra.* A landowner challenging an assessment has the burden of showing a lack of substantial evidence. *See Hiransomboon v. City of Tigard, supra,* 35 Or App at 599.

■ We conclude that the city's action in fixing the LID boundaries is supported by substantial evidence. The district does not directly challenge its individual assessment; neither does it challenge the city's inclusion of Tax Lot 100 in the LID or the allocation of the assessment within the LID. The only substantive question raised is whether properties near or abutting the improvement should also have been included. The district has not offered any evidence that those properties were, in fact, specially benefited. It argues, however, that it is "patently obvious" that property abutting the improvement is specially benefited by virtue of proximity alone and that, therefore, there is a presumption of special benefit which the city must overcome by substantial evidence in the record. We do not agree that all properties that abut an improvement are presumed to have benefited specially. Benefit is a question of fact to be determined on a case-by-case basis. *See Stanley v. City of Salem, supra,* 247 Or at 66.

The engineer's report prepared in the course of planning for the improvement identified certain properties, including the district's, as receiving the special benefit of development potential as a result of the improvements. The engineer stated that the remaining properties in the area, including many properties abutting the improvement, would receive only the general benefit of increased safety and convenience. That evidence could form the basis for fixing the LID boundaries so as to exclude certain abutting properties.[1]

■ In voiding the assessment, the circuit court cited § 6

---

[1] The district's arguments pointing to incidents allegedly demonstrating arbitrariness on the part of the city do not merit discussion.

of the city's Ordinance 70,[2] which requires, after the formation
of an LID, the appointment of a board of viewers to determine
the method of assessment of all benefited properties within
the LID. The court stated that the city had failed to assess all
properties receiving a benefit and had failed to give a reason-
able basis for not doing so. The court's reference to § 6 is
mistaken; that section does not apply to the *creation* of an
LID. It applies only to the *method of assessment within the
LID*, and that process is not challenged. Additionally, the
court's reasoning, like that of the school district, would incor-
rectly place the burden of proof on the city to explain why
certain properties were excluded from the LID.

■ The district argues that, even if the assessment is
supported by substantial evidence, the circuit court's decision
should be upheld on other grounds. The only other ground
that merits discussion is the contention that there were defi-
ciencies in the city's proceedings.

The procedural requirements which the district con-
tends were violated are not set forth in the statutes. They are
contained in Ordinance 70 and deal with the content of the
notices which the city is required to give to affected property
owners. We conclude that any defects in the notices were not
fatal to the assessment. Ordinance 70, § 20, provides, in part:

"No improvement assessment shall be rendered invalid by
reason of a failure of the Engineer's Report to contain all of
the information required by Section 2 of this Ordinance, or by
reason of a failure to have all of the information required to be
in the improvement Resolution, the assessment Resolution,
the Lien Docket or notices required to be published and
mailed, nor by the failure to list the name of, or mail notice to
the owner of any property as required by this Ordinance, or by
reason of any error, mistake, delay, omission, irregularity or
other act, jurisdictional or otherwise, in any of the proceed-
ings or steps herein specified, unless it appears to the Council

---

[2] Ordinance 70, § 6, provides, in part:

"[After the creation of an LID] the Mayor shall appoint three residents of the
city of Wilsonville to view such proposed public improvement to determine a
method or methods of assessing all property receiving benefits * * *."

Similarly, § 8 provides, in part:

"After the Council by Resolution has created a local improvement district, the
Council shall direct the Board of Viewers to determine or review the calculations
of the proposed assessment for each property benefited by the improvement * * *."

that the assessment is unfair or unjust in its effect upon the person complaining; and the Council shall have the power and authority to remedy and correct all such matters by suitable action and proceedings."

We also conclude that there is evidence to support the circuit court's finding that the district has suffered no prejudice as a result of the alleged procedural deficiencies.[3]

Reversed; assessment reinstated.

---

[3] Because of our disposition, we do not address the city's second assignment, which deals with the trial court's exclusion of evidence which allegedly supports the city's action.