Argued and submitted July 1, 2004, reversed and remanded August 10, 2005

SALOSHA, INC.,
Junidawe, LLP, James C. Jagger,
and James C. Jagger, P.C.,
*Appellants,*

*v.*

LANE COUNTY,
and Milo Mecham,
Lane County Hearings Official,
*Respondents.*

16-01-14231; A120696

117 P3d 1047

James C. Jagger argued the cause and filed the briefs for appellants.

Marc Kardell argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioners appeal from a judgment in a writ of review proceeding that upheld a Lane County order determining that petitioners had violated two sections of the Lane Code and imposing a civil penalty for the violations. Specifically, Lane County found that petitioners had violated Lane Code section 5.730(1)(b), prohibiting the storage of inoperable vehicles on private property, and Lane Code section 5.740(1), prohibiting the storage of solid waste on private property. To determine the appropriate civil penalty, the county used a formula from the Lane Manual. The trial court affirmed the order. We reverse and remand.

At the center of this dispute is a piece of real property that Lane County has long regarded as a nuisance. On March 29, 2000, petitioners became the owners of that property,[1] but the story begins much earlier. In the early 1990s, the property was owned by Jennie Milligan. By June 1992, she had conveyed the property to William Milligan, Kipp Milligan, and Cactus Milligan, retaining only a life estate for herself. Jennie Milligan died in 1993 owing a substantial sum to Sacred Heart General Hospital for medical services. The hospital successfully sought to have her conveyance of the property set aside. Petitioner James Jagger, an attorney, represented the Milligans in that matter.

In 1995, Lane County issued an order to comply to the Milligans that directed them to remove all solid waste from the property by November 20, 1995. The Milligans did not comply with the order, and the county issued a notice of civil violation. The county assessed a fine against the Milligans that, by the time it was perfected as a lien against the property in April 1996, amounted to $95,000.

In 1997, the Milligans agreed to sell their interest in the property to petitioner Salosha, Inc. Sacred Heart General

---

[1] It is unclear from the record which of petitioners actually holds title to the property. The record shows that James Jagger controls the three institutional petitioners, Junidawe, L.L.P., Salosha, Inc., and James C. Jagger, P.C. The hearings official dismissed James C. Jagger, P.C., as a party but did not resolve whether Junidawe, L.L.P., or Salosha, Inc., owned the property at the relevant times. We need not resolve the question either.

Hospital agreed to dismiss its lawsuit against the estate of Jennie Milligan if Salosha, Inc., paid the debt that Jennie Milligan owed to the hospital. In exchange, Salosha, Inc., would take title to the property from the Milligans.

Petitioners took title to the property on March 29, 2000. At that time, inoperable vehicles, automobile parts, and unidentifiable refuse were present throughout the property. On April 18, 2000, Lane County issued to petitioners a notice of failure to comply, citing violations of the Lane Code, specifically the provisions prohibiting the storage of inoperable automobiles and solid waste. Under Lane Code section 5.017(4)(c), the county may issue a notice of failure to comply without first issuing an order to comply or attempting to secure voluntary correction if the failure to comply is "the same act or condition that served as the basis for a previous order to comply." Relying on the 1995 enforcement action against the Milligans, the county sought to avail itself of Lane Code section 5.017(4)(c). The hearings official allowed the county to do so with regard to the solid waste violation because the action against the Milligans had involved that code provision; however, because the previous action did not involve the inoperable vehicle provision, the hearings official dismissed the allegations under that provision. Ultimately, the hearings official concluded that petitioners had violated the solid waste ordinance, assessed a fine of $540, and ordered petitioners to abate the nuisance conditions by October 5, 2000. Petitioners did not appeal that order.

On February 5, 2001, the county sent petitioners the notice of failure to comply that ultimately led to this appeal. It alleged that petitioners remained in violation of the Lane Code provisions prohibiting the storage of inoperable vehicles and solid waste. Petitioners requested a hearing, which was held on April 13, 2001. By the date of the hearing, all of the automobiles had been removed, but solid waste, including a stack of up to 1,200 tires, remained on the property. At the hearing, the county withdrew the allegations of a violation of the inoperable automobile provision. Nonetheless, when the hearings official issued his decision, his first conclusion of law was that petitioners had violated both the solid waste and the inoperable vehicle provisions. His order

imposed a penalty of $480 per day from the date of the hearing until petitioners complied with the order.

■   Petitioners sought a writ of review in the Lane County Circuit Court. ORS 34.010-34.102. After reviewing the record, the trial court affirmed the hearing official's order. Petitioners appeal, raising two assignments of error. First, petitioners argue that, because the county withdrew allegations regarding violations of the inoperable automobile code, neither the conclusion that petitioners had violated the inoperable vehicle provision nor the conclusion that petitioners were subject to the $480 per day penalty is supported by substantial evidence. ORS 34.040(1)(c). In their second assignment of error, petitioners assert that the formula used by the hearings official to calculate the penalty was not applicable to the facts of this situation and that the penalty calculation was not supported by substantial evidence in the record.[2] We review the trial court's affirmance of the county's order for errors of law; that is, we ask whether the trial court correctly applied ORS 34.040(1)(c).[3] *Johnson v. Civil Service Board*, 161 Or App 489, 498, 985 P2d 854, *modified on recons*, 162 Or App 527, 986 P2d 666 (1999).

■   In support of their first assignment of error, petitioners argue that they cannot tell whether the hearings official

---

[2] We pause to note that we reject petitioners' argument that the penalty formula applied by the hearings official is not applicable to this case. Though not so labeled, that argument appears to be that the county either "[f]ailed to follow the procedure applicable to the matter before it," ORS 34.040(1)(b), or that the county "[i]mproperly construed the applicable law." ORS 34.040(1)(d). However, the penalty formula, set forth in the Lane Manual, is by county order applicable to all administrative civil penalties. Lane Manual §§ 5.015-5.020. Thus, the trial court did not err in upholding the county's use of the penalty formula.

[3] ORS 34.040(1) provides:

"The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:

"(a)  Exceeded its jurisdiction;

"(b)  Failed to follow the procedure applicable to the matter before it;

"(c)  Made a finding or order not supported by substantial evidence in the whole record;

"(d)  Improperly construed the applicable law; or

"(e)  Rendered a decision that is unconstitutional."

considered the inoperable vehicle violation when calculating the penalty.[4] Where a petitioner argues that an order is not supported by substantial evidence, a court will also review the order for substantial reason to ensure that the order articulates the reasoning that leads from the facts found to the conclusions drawn. *Drew v. PSRB*, 322 Or 491, 497-500, 909 P2d 1211 (1996). Lane Code section 5.017(5) provides a set of factors that the county must consider when imposing an administrative civil penalty. By order, set forth in the Lane Manual at section 5.020, the county has codified the formula by which it will calculate all administrative civil penalties in light of Lane Code section 5.017(5). That formula reduces to this equation: $(H + P + R + C + E) \times (A + G) \times \$15$, where "H" stands for history, "P" stands for prior violations, "R" asks whether the violation is repeated or continuous, "C" stands for cause, "E" stands for efforts to correct the failure to comply, "A" stands for enforcement actions against the violator, and "G" stands for the gravity of the offense. In the penalty calculation, each of those factors is assigned a numerical value as determined by the Lane Manual, and the penalty is calculated.

Petitioners argue that the hearings official may have impermissibly considered the inoperable vehicle violation in calculating the value of the "G" or gravity variable. The order in this case reads:

"G (gravity) is the immediacy and magnitude of the violation at the time enforcement is initiated.

"Lane County determined that this was a significant violation, not posing an immediate threat. The [*sic*] leads to having a value of 2 assigned to this factor."

That brief statement begs the question of why this violation was significant. Not only is that statement itself conclusory, but none of the findings articulated by the hearings official

---

[4] The county argues that petitioners did not preserve that argument below. However, petitioners argued in their trial memorandum that, in spite of the stipulated withdrawal of allegations of stored motor vehicles, "the hearings official appears to spend a great deal of his time within his opinion referring to the manner in which vehicles were stored and removed and presumably includes that as a part of any penalty imposed." Thus, petitioners preserved their argument.

seems to indicate why this violation was significant. Petitioners theorize that the hearings official considered the presence of the automobiles in concluding that the violation was significant. However, the record reveals that any violation on this property could be considered significant as a matter of law.

Under Lane Manual section 5.020(1)(b)(ii)(bb),

"[t]he value of 'G' shall be * * * 2, for a failure to comply which is significant, but does not pose an immediate threat to health, safety or the general welfare. These occurrences pose significant potential consequences, though the threat is not immediate. These situations can be tolerated for a limited period of time with interim measures taken to minimize the threat. *For purposes of this factor, a failure to comply shall be considered significant if it occurs on property subject to the provisions of [Lane Code] Chapter 10 and 16.210 through 16.400.*"

(Emphasis added.) A zoning map in the record indicates that the property in question is zoned E-25. Such a designation indicates that the property is in the Exclusive Farm Use Zone and cannot be subdivided into parcels smaller than 25 acres in size. Lane Code § 16.212(9)(a). As such, the property is subject to Lane Code section 16.212 and falls within the scope of the final sentence of the Lane Manual quoted above. Thus, a failure to comply on this property *shall* be considered significant. Whether the hearings official had concluded that petitioners had violated only the solid waste provision, only the inoperable vehicles provision, or both, the Lane Manual provides that "G" be assigned a value of 2.

■■ However, that line of reasoning is not apparent in the hearings official's order. The hearings official made no finding regarding the zoning of the subject property. When dealing with an amorphous standard such as "significant," under the rule of "substantial reason," an administrative decision-maker must "demonstrate in its order a rational relationship between the facts and the legal conclusions upon which it acts in each case." *McCann v. OLCC,* 27 Or App 487, 493, 556 P2d 973 (1976). The justification for the substantial reason rule is as follows:

"If there is to be any meaningful judicial scrutiny of the activities of an administrative agency—not for the purpose of substituting judicial judgment for administrative judgment but for the purpose of requiring the administrative agency to demonstrate that it has applied the criteria prescribed by statute and by its own regulations and has not acted arbitrarily or on an ad hoc basis—we must require that its order clearly and precisely state what it found to be the facts and fully explain why those facts lead it to the decision it makes. Brevity is not always a virtue."

*Home Plate, Inc. v. OLCC*, 20 Or App 188, 190, 530 P2d 862 (1975).

■    Although it originated in the world of judicial review of the actions of state administrative agencies, the substantial reason rule also applies to the orders of local governments that are reviewed by writ of review rather than under the Administrative Procedures Act. *See Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 21, 569 P2d 1063 (1977) (imposing requirement that local governments provide adequate finding and reasons in orders); *Feitelson v. City of Salem*, 46 Or App 815, 820, 613 P2d 489 (1980) ("An agency must issue findings which explain the basis of its decision."). Even though we can trace through the record a legitimate path by which the hearings official could have reached his conclusion regarding the significance of petitioners' violation, our task on judicial review is not to serve as a pathfinder. *See Green v. Hayward*, 275 Or 693, 706, 552 P2d 815 (1976) ("The chances of misunderstanding and of inconsistent * * * decisions are greatly enhanced when the courts are forced, because of inadequacies in the record, to undertake a search for evidence to support findings which were not made and reasons which were not given."). Thus, because the order lacks substantial reason, the trial court erred in affirming it.

The county argues that we should take this opportunity to reject the substantial reason requirement, just as the Supreme Court rejected the "we can't tell" rule in negligence cases in *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003). In *Shoup*, the Supreme Court concluded that the "we can't tell" rule—which required the appellate courts to reverse judgments entered upon general verdicts where

one of two or more theories of negligence was invalid—conflicted with ORS 19.415(2) "which precludes an appellate court from reversing a judgment 'except for error substantially affecting the rights of a party.' " *Id.* at 168 (quoting ORS 19.415(2)).

█        We decline the county's invitation to abandon the substantial reason rule. The trial court's error in overlooking the county's failure to adequately articulate the reasons behind its conclusions substantially affected petitioners' statutory right to meaningful judicial review. Petitioners are " 'entitled to even treatment by rule of law and reasonable confidence that [they have] received such treatment.' " *McCann*, 27 Or App at 493 (quoting *Sun Ray Dairy v. OLCC*, 16 Or App 63, 71, 517 P2d 289 (1973)). ORS chapter 34, the writ of review chapter, grants to petitioners the statutory right to seek judicial review of this order. For that right to have any meaning, the courts must be able to provide meaningful judicial review. As the Supreme Court has explained,

> "[w]hat is needed for adequate judicial review is a clear statement of what, specifically, the decision-making body believes, after hearing and considering all the evidence, to be the relevant and important facts upon which its decision is based. Conclusions are not sufficient."

*Sunnyside Neighborhood*, 280 Or at 21. An unreasoned order substantially affects a party's statutory right to meaningful judicial review, and therefore is not harmless error.

Reversed and remanded.