Submitted May 7, 2010, affirmed March 9, petition for review denied
August 18, 2011 (350 Or 573)

Art BULLOCK,
individually and as Trustee,
791 Glendower Trust dated December 25, 2003,
*Plaintiff-Appellant,*

*v.*

CITY OF ASHLAND,
a municipal corporation,
*Defendant-Respondent.*

Jackson County Circuit Court
043972E7, 043971Z3;
A131252 (Control), A133660

250 P3d 947

379

Art Bullock filed the briefs *pro se*.

Jona Maukonen, C. Robert Steringer, and Harrang Long Gary Rudnick P.C. filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Duncan, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Petitioner initiated a writ of review action challenging the City of Ashland's decision to form a local improvement district (LID) in order to assess the cost of constructing sidewalks and certain street improvements within the proposed district.[1] Petitioner is trustee of property within the LID boundary and will be assessed for a portion of the cost of the improvements. Before the reviewing court, petitioner argued, among other things, that the city's decision should be voided because the LID boundary was "gerrymandered" and because a city employee involved in planning the LID insufficiently disclosed a conflict of interest. The court remanded the case for additional findings on those two issues but ultimately affirmed the city's decision. On appeal, petitioner raises several assignments of error. We write to address only three of petitioner's assignments and reject the others without discussion. For the reasons stated below, we affirm.

On August 3, 2004, the city council approved Resolution No. 2004-30, which declared the city's intent to form an LID "for sidewalk and traffic calming improvements to [West] Nevada Street" and set a public hearing on the proposal. The resolution also described the estimated cost allocation, the benefited properties, and the proposed boundaries of the LID, which included all property fronting the improvements on Nevada Street (53 lots) and all property within a new subdivision at the west end of the street (72 lots). Notice of the proposed LID was subsequently mailed to the affected property owners, and a public hearing on the district formation was held on September 7, 2004. At that meeting, after testimony and exhibits had been received, the council approved Resolution No. 2004-31, which authorized and ordered formation of the LID and construction of improvements within the Nevada Street right-of-way, and determined the estimated assessments on properties within the LID boundary. The resolution declared that "it appears to the Council that * * * all property to be assessed will be benefited

---

[1] This is a consolidated appeal from two actions—one for a writ of review and the other seeking declaratory and injunctive relief. Petitioner makes no assignment of error regarding the latter case.

to the extent of the probable amount of the respective assessments to be levied for the costs." The council also adopted a motion to approve the design plan for the proposed improvements, which city staff had developed following meetings with neighborhood residents.

Petitioner filed a petition for a writ of review, seeking to annul the city's decision to form the LID. The writ issued, and the city filed its return of the record of the district formation proceedings. Petitioner raised over 40 "allegations of error," including allegations that the LID boundary was arbitrarily drawn to exclude property benefited by the proposed sidewalk and traffic improvements and that the city had violated provisions of ORS chapter 244 governing conflicts of interest of public officials. Petitioner contended that the Public Works Director, Paula Brown, owned property in the area allegedly benefited by the proposed improvements but excluded from the district and had a conflict of interest in participating in the district formation process. After reviewing the record and arguments of the parties, the reviewing court issued an opinion that ordered findings on those two issues:

"The record before the court is devoid of findings on the part of the Ashland City Council indicating what evidence they relied upon in reaching their decision[ ] * * * to form the LID and to direct the Ashland city staff to complete the design and move forward. * * * There are two specific respects in which the record must be supplemented to include the findings that will enable the court to determine whether any of the errors set out in ORS 34.040 are present in this case:

"(A). Although there is sufficient evidence in the record to support the Council's overall decision to institute a Local Improvement District in the area of Nevada Street, there are no findings or reasoning about the Council's choice of boundaries for the Nevada LID, specifically, the inclusion of the [subdivision] properties but not some other single-lot properties near Nevada Street, the specific basis for Petitioner's objection. * * * The city council is directed to enter findings on why the boundaries of the Nevada LID are where they are.

"(B). Similarly, although there is evidence in the record to support the Council's choice to proceed with the formation of the Nevada LID on September 7, 2004, notwithstanding the orally disclosed conflicts of interest of [the public works director] and the memorandum provided to the Council at or before the September 7, 2004 meeting, there are no findings to indicate why the Council decided to proceed, despite the identified conflicts. The City Council is directed to enter such findings.

"The City Council is directed to enter the findings called for by this Order within 45 days of the entry of this Order and to provide such findings to the Court within 10 days thereafter. Once the Court has received the City's findings, the Court will enter its further Order regarding Petitioner's allegations of error concerning the Nevada LID boundary and [the public works director's] conflicts of interest."

(Footnote omitted; underscoring in original.) The court concluded that the remaining allegations of error were meritless but retained jurisdiction to make a final determination on the adequacy of the city's findings.

Petitioner objected to the procedure on the ground that the court did not have authority to order additional findings. The court rejected petitioner's argument, explaining that " 'ORS 34.100 authorizes a reviewing court to remand to an inferior court, officer, or tribunal and direct the inferior body to proceed according to the reviewing court's decision.' "

The council subsequently adopted an order approving findings and conclusions and submitted its determinations in accordance with the reviewing court's order. The order did not change the LID formation resolution. The council found that establishment of the LID boundary was supported by evidence in the record:

"2.2 * * * With the anticipated increases in traffic volume resulting from the construction of the * * * Subdivision, there would be an increased chance for pedestrian, vehicular conflict. Nevada Street does not have any sidewalks between Helman Street and the * * * Subdivision. * * *

"2.3 The proposed LID boundary included lots fronting on Nevada Street (53 properties) from Helman Street west to and including the new * * * Subdivision * * *. This

boundary was selected as these 53 properties would be directly benefited by the improvements along Nevada Street. Helman Street marks the beginning of the residential district and since sidewalks are already in place between Helman Street and Oak Street, that block was not considered for inclusion. The * * * Subdivision (72 properties) was included as a condition of their planning approval in accordance with the requirements of [Ashland Municipal Code] 18.80.060 B.2. * * * The proposed boundary was consistent with other neighborhood sidewalk and traffic calming LIDs * * * as only those properties directly on the affected streets or within subdivisions for which participation was required pursuant to AMC 18.80.060 B.2[ ] were included in the LID boundary area.

"There had been some discussion that all of the [surrounding] Neighborhood or at least all of the homes north of Nevada Street should be included in the LID boundary as all will be affected by the improvements as most all residents travel some part of Nevada Street to access their homes. The only LID in recent years that went beyond the immediate street improvement area was Tolman Creek Road. Tolman Creek Road is considered a major collector/ arterial street and the improvements were full street improvements * * *. In that case, the boundary was extended to include all homes that directly and indirectly accessed Tolman Creek Road. This requirement was further reinforced by the fact that nearly all subdivisions were required to participate in the LID as a condition of the planning approval pursuant to the requirements of AMC 18.80.060 B.2."

The city further concluded that the conflict of interest "has been fully mitigated by virtue of the fact that [the public works director] was part of the class that all equally received the benefit and therefore, has no impact upon the formation of the LID." The city explained:

"3.2  At the September 7, 2004 Council meeting Public Works Director Paula Brown verbally declared a conflict of interest as she and her husband owned property * * * located within the assessment district boundary and property which is located * * * immediately outside the LID boundary proposed by staff and adopted by the City Council. When Ms. Brown was initially assigned the task of putting together the LID, Ms. Brown notified City Administrator,

Gino Grimaldi, of her property ownership on Cambridge Street. Ms. Brown stated she took efforts to mitigate any conflict by relegating decisions regarding the formation of the assessment boundary, the allocation of the assessment to each benefited property to Project Manager James Olson.

"3.3 Council determined that Ms. Brown did not benefit financially from her ownership of the property resulting from her position within the City and that she had taken the steps to ensure that any conflict was mitigated. Any defect in not following state law precisely was insignificant and had no bearing on the validity of the proposed formation of the Local Improvement District. It was further determined that Ms. Brown did not receive any benefits or considerations beyond that which would have been available to any other citizen. Council determined that the conflict should not stop the proposed formation of the local improvement district as nothing relating to the conflict would change the proposed boundary, the needed improvements, nor the proposed assessments."

The court reviewed the city's findings and concluded that they were supported by substantial evidence in the record. The court entered a general judgment in favor of the city.

■ On appeal, petitioner first argues that the reviewing court erred in "ordering selected findings prior to final judgment rather than remanding [the] city's entire decision."[2] Petitioner contends that ORS 34.100 does not provide a statutory basis for the procedure used by the reviewing court. We disagree.

ORS 34.100 provides:

"Upon the review, the court shall have power to affirm, modify, reverse or annul the decision or determination

---

[2] ORS 34.040 allows review of a non-land-use local government decision that results "in the exercise of judicial or quasi-judicial functions." The court held in *School District No. 3J v. City of Wilsonville*, 87 Or App 246, 250, 742 P2d 59, rev den, 304 Or 548 (1987), that

"the process of determining LID boundaries is sufficiently related to the process of determining which properties have benefited from an improvement to justify its characterization as quasi-judicial and to subject it to review by writ of review."

Petitioner's complaints about the substance of the LID boundary decision and the process used to make that decision were reviewable by writ of review. We express no opinion on the justiciability of reviewing improvement design decisions by writ of review.

> reviewed, and if necessary, to award restitution to the plaintiff, *or to direct the inferior court, officer, or tribunal to proceed in the matter reviewed according to its decision.* From the judgment of the circuit court on review, an appeal may be taken in like manner and with like effect as from a judgment of a circuit court in an action."

(Emphasis added.) In *Home Builders Assn. v. City of West Linn*, 204 Or App 655, 662, 131 P3d 805, *rev den*, 341 Or 80 (2006), we held that the italicized text authorizes a reviewing court to remand a decision to an inferior tribunal and direct that entity to proceed according to the reviewing court's decision. In that case, a developers' association initiated a writ of review proceeding after the City of West Linn adopted a resolution increasing the system development charge that the city imposes on new developments to pay for parks and open spaces. *Id.* at 657. The reviewing court rejected all but one of the association's objections. *Id.* at 659. The court entered judgment remanding the case for additional findings on the remaining issue, but retained jurisdiction over the matter to determine the legality of any modifications made by the city. *Id.* at 659-60. After the city made findings and adopted a new resolution on remand, the court entered a supplemental judgment affirming the new resolution. *Id.* at 660.

■     The association appealed, arguing, among other things, that the reviewing court erred by remanding the case to the city and that the city lacked authority to modify its decision on remand. *Id.* We rejected both arguments, finding that the court had authority under ORS 34.100 to remand the case and that the city could modify its decision absent a stay of the court's judgment. *Id.* at 662-63.

This case is not materially distinguishable from *Home Builders Assn.* Here, the reviewing court entered an order that directed the city to proceed according to the court's decision, *i.e.*, it remanded to the city for entry of findings on two specific matters. ORS 34.100 explicitly recognizes the court's power to do so. The fact that the court remanded the case prior to final judgment does not alter the character of its action. There is nothing in the text of the statute that suggests that the court's authority to remand for additional findings is confined to post-judgment situations, and the authorities cited by petitioner are not to the contrary. In any event,

it is clear that the reviewing court could have entered judgment remanding the case for findings and then affirmed the new findings in a supplemental judgment; thus, petitioner was not prejudiced by any defect in the court's procedure. ORS 34.040(1)(b) (allowing writ of review when "a substantial interest of a plaintiff has been injured and an inferior court * * * appears to have * * * [f]ailed to follow the procedure applicable to the matter before it").

Petitioner next argues that the court erred in its determination that the city's decision on the LID boundary was supported by substantial evidence and substantial reason. The court concluded that

"[t]he City's findings are sufficient to support its decisions. Specifically, the findings are sufficient to rebut Petitioner's allegation that the City acted 'arbitrarily' when it chose the properties to include in the Nevada LID. While Petitioner may disagree about where the boundaries should have been, the City chose the boundaries purposefully and it articulated a rational basis for its choices both in its findings and earlier in the staff memos on which the City Council relied in making its decision."

Petitioner argues that the city's decision delimiting the LID boundary was not supported by substantial evidence because there was no rational explanation for including the subdivision properties within the LID while excluding similarly situated properties in the neighborhood surrounding Nevada Street. Petitioner contends, in essence, that the city's decision lacked substantial evidence in two respects: (1) in its determination that the subdivision was benefited and (2) in its exclusion of other properties that were accessed via Nevada Street.

As noted earlier, a city's decision fixing LID boundaries is a quasi-judicial function subject to review by writ of review. That review is to determine whether the city's decision was supported by substantial evidence. *School District No. 3J v. City of Wilsonville*, 87 Or App 246, 250-52, 742 P2d 59, *rev den*, 304 Or 548 (1987); *see also* ORS 34.040(1)(c) (providing for substantial evidence review). "There is substantial evidence to support a finding when, viewing the record as a whole, a reasonable person could make the finding." *Baker v.*

*City of Woodburn*, 190 Or App 445, 456, 79 P3d 901 (2003), *rev den*, 336 Or 615 (2004). The city's determination is also reviewed for substantial reason to ensure that there is a rational nexus between the facts found and the conclusions drawn. *Salosha, Inc. v. Lane County*, 201 Or App 138, 145, 117 P3d 1047 (2005) (substantial reason rule applies to local government orders reviewed by writ of review).

We conclude that the court did not err in concluding that the city's LID boundary decision was supported by substantial evidence and substantial reason. The reviewing court properly stated and applied the substantial evidence standard. The record shows the location of the benefited properties. The lots abutting the sidewalks and traffic calming improvements, according to the city's findings, "would be directly benefited by the improvements." A reasonable person could conclude that sidewalks and pedestrian improvements provide special access and benefits to those lots. Petitioner does not dispute that the frontage lots are justifiably within the area of special benefit. Instead, his dispute appears to be that inclusion within the district of only certain nonfrontage lots (the undeveloped subdivision lots) and not other nonfrontage lots (property on streets that intersect with Nevada Street) is arbitrary and lacks substantial reason.

The council's findings on remand did not explicitly state that the subdivision was directly benefited by the improvements, although it earlier found in Resolution No. 2004-31 that "it appears to the Council that * * * all property to be assessed will be benefited to the extent of the probable amount of the respective assessments to be levied for the costs." It is apparent from all of the evidence that those properties are benefited—Nevada Street and its sidewalks are the sole means of pedestrian and vehicular access to the subdivision. Although there are also developed properties north of Nevada Street that will likely use that street, the city articulated a sufficient reason for excluding those properties from the LID while including the subdivision properties: construction of the subdivision in part necessitated the improvements because it was expected to increase traffic volume on Nevada Street and the subdivision was required to participate in the LID as a condition of their planning approval pursuant to the

Ashland Municipal Code. *See* AMC 18.80.060 B.2 ("When part of a proposed subdivision * * * abuts an existing unimproved street, the property owner, or a representative, shall * * * sign an agreement in favor of improving said street in the future to full City standards as outlined in this Section."). Moreover, the city explained that its demarcation of the boundary was consistent with other LIDs; the only prior LID boundary that "went beyond the immediate street improvement area" was for improvements to a "major collector/arterial street." Nevada Street is not such a street. Thus, for pedestrian and local street improvements, the city includes within the assessment district the lots abutting the improvement and unimproved lots that are benefited more generally by satisfaction of development approvals that are tied to participation in the LID. The distinction between developed and undeveloped lots, and obligated and unencumbered land, is not arbitrary. *Cf. Dames v. City Council of Forest Grove*, 60 Or App 19, 652 P2d 839 (1982), *rev den*, 294 Or 391 (1983) (distinction in assessment formula between improved and unimproved property not arbitrary).

■   Thus, a reasonable person could find that the subdivision should be included in the LID while other properties not fronting on Nevada Street should be excluded. The city articulated a reason for distinguishing the improvement benefits received by the included and excluded properties. The court's review for substantial reason requires no more. The court was precluded from going further and reweighing the evidence and substituting its judgment for that of the city. *Baker*, 190 Or App at 455. The court did not err in affirming the city's LID boundary decision.

■   Petitioner lastly contends that the court erred in "allowing the city to decide Nevada LID without disclosing and disposing in the public record Public Works Director Paula Brown's financial conflicts of interest." The standard of review for the court was whether the city "[f]ailed to follow the procedure applicable to the matter before it." ORS 34.040(1)(b). Petitioner does not explain what procedure was not followed. ORS 244.120(2)(b) requires, in some circumstances, certain public officials (an "elected public official, other than a member of the Legislative Assembly, or an appointed public official serving on a board or commission"),

when "met with an actual conflict of interest," to "refrain from participating as a public official in any discussion or debate on the issue out of which the actual conflict arises or from voting on the issue." Petitioner does not claim that any council member participated in the district formation proceeding while having an "actual conflict of interest."

Brown's obligation, "when met with an actual or potential conflict of interest," was to

> "notify in writing the person who appointed the public official to office of the nature of the conflict, and request that the appointing authority dispose of the matter giving rise to the conflict. Upon receipt of the request, the appointing authority shall designate within a reasonable time an alternate to dispose of the matter, or shall direct the official to dispose of the matter in a manner specified by the appointing authority."

ORS 244.120(1)(c). It is unclear if Brown had an actual or potential conflict of interest in the planning of the district formation proceedings or, even if she did, whether the conflict was disclosed to her appointing authority. The record reflects that Brown orally disclosed a conflict of interest at the September 7 meeting and that the city council was aware of the matter. The council found that Brown had taken steps to mitigate the conflict by delegating decisions regarding the LID to the project manager. Furthermore, the council determined that Brown did not benefit by virtue of her position. The district boundaries, in fact, were set by the council in a manner consistent with prior practices of the city, and not through any official action of Brown.

But whether Brown properly disposed of an actual or potential conflict of interest arising because of staff work prior to the district formation hearing is beside the point. The issue is whether the *council* "[f]ailed to follow the procedure *applicable to the matter before it*." ORS 34.040(1)(b) (emphasis added). The matter before the council was a hearing on formation of the assessment district. The conflict of interest procedures applicable to the district formation proceedings pertain to recusal of conflicted decision-makers and conflicts that arise in the course of the proceeding. ORS 244.040. Petitioner does not point to a violation of a procedure applicable

to the district formation hearing. The reviewing court did not err in concluding that the council followed proper procedures in making its decision.[3]

Affirmed.

---

[3] To whatever extent petitioner complains of a failure to disclose Brown's conflict of interest at the formation hearing as a condition of her participation in that hearing, ORS 244.130(2) provides that

"[a] decision or action of any public official or any board or commission on which the public official serves or agency by which the public official is employed may not be voided by any court solely by reason of the failure of the public official to disclose an actual or potential conflict of interest."